**UNITED STATES of America**

v.

**Pedro GOMEZ, a/k/a José Rivera Lopez, Appellant.**

**No. 76–1947.**

United States Court of Appeals, Third Circuit.

Argued Jan. 3, 1978.

Reargued Nov. 6, 1978.

Decided Feb. 2, 1979.

Certiorari Denied May 14, 1979.
See 99 S.Ct. 2172.

James V. McGovern, Tarrytown, N. Y., for appellant.

Robert J. Del Tufo, U. S. Atty., Newark, N. J., for United States; Maryanne T. Desmond, Asst. U. S. Atty., on brief.

Argued Jan. 3, 1978.

Before ADAMS,* GIBBONS, and GARTH, Circuit Judges.

Reargued Nov. 6, 1978 In Banc.

Before SEITZ, Chief Judge, and ALDISERT, GIBBONS, ROSENN, HUNTER, WEIS, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Three issues have been raised before us on this appeal by Pedro Gomez from his criminal conviction under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* (1977). First, we are asked to consider whether the defendant Gomez can properly be sentenced on two convictions; one based on possession of a controlled substance with intent to distribute (Count II) and the other based on actual distribution (Count III) when both convictions arise out of the same criminal undertaking. Second, if both sentences cannot be sustained, we are then called upon to decide the appropriate relief to be accorded. Finally, we are asked to review the propriety of the district court's charge, concerning specific intent.

We hold that Gomez may not be sentenced for both possession with intent to distribute and actual distribution on the facts of this case. Because the district court imposed separate sentences for each offense, we are therefore required to vacate these sentences and remand for imposition of a single general sentence. We also hold that the district court did not err in its charge to the jury.

---

* Judge Adams was unable to sit with the Court in banc because of injuries.

## I

A three count indictment was returned against Gomez on November 24, 1975. In the first count (Count I), which is not in issue on this appeal, Gomez was charged with conspiring to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846.[1] He was charged in Count II with possession with intent to distribute cocaine on or about April 2, 1975 at Paterson, New Jersey in violation of 21 U.S.C. § 841(a)(1).[2] Count III charged Gomez with violating 21 U.S.C. § 841(a)(1) by the actual distribution of cocaine on or about April 2, 1975 at Paterson, New Jersey.[3]

Substantial evidence was presented at trial which would support Gomez's convictions for conspiracy and for the possession with intent to distribute cocaine, and the actual distribution of one half kilogram of cocaine to John Daniocet, an agent of the Drug Enforcement Administration, on April 2, 1975, at Paterson, New Jersey. No challenge has been made as to the sufficiency of the evidence. The jury returned a verdict of guilty on each count of the indictment. The district court thereupon imposed the following sentence: (1) a fifteen year term of imprisonment on Count I; (2) a ten year term of imprisonment on Count II, to run consecutively to the sentence on Count I; and (3) a fifteen year term of imprisonment on Count III, to run concurrently with the sentence on Count I. The end result was a total term of imprisonment of twenty-five years. In addition, a special three year parole term was imposed on each count. Gomez's appeal was initially heard by a panel of this court. Prior to the filing of the panel opinion, the court reheard argument *en banc.*

## II

Gomez argues on appeal that 21 U.S.C. § 841(a)(1) should not be construed so as to permit either separate convictions or separate sentences for possessing a controlled substance with intent to distribute and for the actual distribution of that controlled substance, at least when these separate convictions relate to the same drug distribution. In response, the government contends that separate convictions and sentences are appropriate when different evidence has been presented to support each theory of criminal liability, claiming that this is such a case. The legislative history of the Comprehensive Drug Abuse Prevention and Control Act gives us no help in resolving this issue. However, based upon an analysis of the structure of the penalty provisions of the Act and applying relevant canons of statutory construction, we are satisfied that while Gomez could be convicted, he could not be separately sentenced on his convictions under Counts II and III.

▇ The Comprehensive Drug Abuse Prevention and Control Act follows the structure of most modern criminal statutes by separating into discrete components the various acts which are made the subject of criminal liability.[4] A reading of the Drug

---

**1.** Count I charged that the conspiracy took place between on or about March 31, 1975 to on or about November 14, 1975.

21 U.S.C. § 846 reads as follows:

*Attempt and Conspiracy*

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**2.** 21 U.S.C. § 841(a)(1) states:

*Prohibited Acts A—Unlawful Acts*

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance;

. . . .

**3.** Gomez was also charged in the second and third counts with violating 18 U.S.C. § 2 (1977) which makes aiders and abettors punishable as principals.

**4.** When statutes are drafted in this manner, it is possible to construe them as creating separate offenses or as creating a single offense with different permissible punishments. *Compare United States v. Gardner,* 347 F.2d 405, 408 (7th Cir. 1965) (different offenses created by federal bank robbery statute) *with O'Clair v. United States,* 470 F.2d 1199, 1202 (1st Cir.

Abuse Act makes it apparent that Congress, in legislating against drug use, intended to encompass every act and activity which could lead to proliferation of drug traffic. Nothing in the statute indicates any congressional intent to limit the reach of this legislation, which is described in its very title as "Comprehensive." If indeed, as we believe, it was the intent of Congress to proscribe all drug activity, then it follows that separate charges and convictions for each component of the offenses described must necessarily be permitted so as to prevent a drug violator from escaping criminal responsibility. Failure to permit the government to bring separate charges and obtain separate convictions on those charges, might enable a criminal defendant to avoid responsibility for his crimes if, on review, an appellate court reversed a single conviction representing only the most factually inclusive offense in a situation where a conviction on a less factually inclusive offense would have been upheld. *See United States v. Corson,* 449 F.2d 544, 550–51 (3 Cir. 1971) (en banc); *note* 17 *infra.* In this case, we are satisfied that when Gomez violated 21 U.S.C. § 841(c)(1) by engaging in the act of distributing cocaine and by possessing that cocaine with an intent to distribute it, he was properly charged with two separate violations.[5]

Our conclusion, however, that separate and discrete *offenses* may be charged does not necessarily require that separate and discrete *sentences* be imposed when a defendant is convicted on each charge, for we are not convinced that Congress intended to pyramid the sentences that may be imposed when two violations of the statute are proved by but one drug distribution. The penalty provisions of the Act have been orchestrated in meticulous detail. Maximum permissible sentences are made to depend, in part, on the type of substance that is manufactured, possessed, or distributed. Cocaine is a Schedule II narcotic drug, 21 U.S.C. §§ 802(16), 812(c), which places it in the maximum penalty category. Sentence severity also depends on the existence of the defendant's prior convictions and the exact nature of the offense charged. Under the statute, maximum penalties are generally doubled if the defendant has been previously convicted of a drug offense, 21 U.S.C. § 841, or if the crime involved distribution to persons under the age of twenty-one, 21 U.S.C. § 845. In contrast, penalties

1972) (single offense created by federal bank robbery statute, with severity of punishment determined by aggravating circumstances). *See* Note, The Federal Bank Robbery Act—The Problem of Separately Punishable Offenses, 18 Wm. & Mary L.Rev. 101, 144–50 (1976).

5. We find further support for the view that 18 U.S.C. § 841(a)(1) creates separate offenses for distribution and for possession with intent to distribute in the structure and substantive terms of the statute. This statute is not drafted in such a way as to gradate the actions which constitute the various offenses, culminating with the most comprehensive offense subsuming those that have preceded it. Moreover, under this statute the severity of punishment *does not depend on the factually inclusive nature* of the offense, but rather on such things as the type of drug involved and the previous criminal record of the offender.

Although the dissent acknowledges that 21 U.S.C. § 841(a) creates separate offenses for possession with intent to distribute and actual distribution, *see* Dissenting Op. at 220, it nonetheless concludes that "the possession offense in § 841(a)(1) was intended to apply only

where the government cannot prove, with respect to a specific instance of possession, that a manufacture, distribution, or dispensation actually took place." *Id.* at 221. In effect, the dissent has redrafted § 841(a) to include an entire provision, which Congress has never enacted. In support of its innovative statutory interpretation four cases are cited—*United States v. King,* 521 F.2d 356 (6th Cir. 1975); *United States v. Stevens,* 521 F.2d 334 (6th Cir. 1975); *United States v. Curry,* 512 F.2d 1299 (4th Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); *United States v. Atkinson,* 512 F.2d 1235 (4th Cir. 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976). However, none of these decisions support the dissent's thesis. They do not hold that § 841(a) precludes separate convictions for possession and distribution, nor do they require a molding of the verdicts returned by the jury. *See* Dissenting Op. at 221–222. Contrary to the dissent's suggestion, the multiple convictions for possession and distribution in each of these cases were sustained and the convictions on the possession counts were not vacated.

are reduced when the only crime involved is personal possession. 21 U.S.C. § 844. Conspiracies are subject to punishment separate and apart from the punishment imposed for substantive offenses. 21 U.S.C. § 846. Severe separate penalties are mandated for persons convicted of engaging in a continuing criminal enterprise. 21 U.S.C. § 848.

In giving effect to these penalty provisions, we are guided by "the established rule of construction that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Simpson v. United States,* 435 U.S. 6, 14, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978). Such a rule is informed by the understanding that a court "will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958).[6] Moreover, an interpretation of the statute prohibiting separate sentences when convictions for possession with intent to distribute and for actual distribution are based on the same drug transaction is in accord with that of the majority of Circuits that have considered the issue. *United States v. Stevens,* 521 F.2d 334 (6th Cir. 1975); *United States v. Atkinson,* 512 F.2d 1235 (4th Cir. 1975); *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976). *United States v. Olivas,* 558 F.2d 1366 (10th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977); *United States v. Oropeza,* 564 F.2d 316 (9th Cir. 1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978).

Here, Gomez, a first offender convicted under Count II of distributing a Schedule II narcotic drug, was subject to a maximum sentence of fifteen years. We do not think Congress intended that he should also be subject to an additional sentence of fifteen years because the jury found that Gomez possessed with intent to distribute *at the same time and place* the same cocaine that he was found to have in fact distributed. To permit the imposition of such an additional sentence would be to undermine and distort the detailed penalty scheme which Congress so carefully constructed. It would subject Gomez to a maximum thirty year sentence for the commission of crimes which we believe that Congress intended to punish by no more than a maximum fifteen year sentence.

The government, nonetheless, argues that the imposition of separate sentences on Counts II and III in this case is permissible because different evidence is required to prove the crime of possession with intent to distribute and the crime of actual distribution. In support of this proposition it cites *United States v. Horsley,* 519 F.2d 1264 (5th Cir. 1973), and *United States v. Daniels,* 572 F.2d 535 (5th Cir. 1970), two cases in which the Fifth Circuit, without substantial analysis, relied on the "different evidence" test[7] to sustain separate convictions and sentences under 21 U.S.C. § 841(a)(1), arising out of the same drug transaction. In both cases, the government had charged possession with intent to distribute and actual distribution. It cannot be ascertained from the factual recitals in these cases whether the possession with intent to distribute and the actual distribution occurred at the same time. To the extent, however, that these cases would authorize the imposition of separate sentences when all that is alleged and proved is the possession with intent to distribute and actual distribution of a single quantity of a drug in a single drug sale,

---

6. *See Bell v. United States,* 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). *Cf. Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (construing 21 U.S.C. §§ 846, 848 as not allowing imposition of cumulative penalties).

7. Under this test, "'convictions for separate offenses arising from a single fact pattern are upheld if each statute proscribing the conduct requires proof of different facts and different elements as to each separate offense.'" *United States v. Horsley,* 519 F.2d at 1265, quoting *United States v. Hill,* 500 F.2d 733, 740 (5th Cir. 1974).

they run counter to our understanding of congressional intent as expressed in the penalty structure of the Comprehensive Drug Abuse Prevention and Control Act. Moreover, to the extent that the Fifth Circuit decisions in *Horsley* and *Daniels* are predicated upon a factual setting in which the violations occurred during the same transaction, we cannot agree with the results there reached and we find their rationale unpersuasive. As we have interpreted congressional intent, it is permissible to impose separate sentences only when the violations charged and proved arise out of two discrete transactions.[8] The possession and distribution counts with which Gomez was charged in the indictment both plainly related to the single April 2, 1975 transaction in Paterson, New Jersey, and it was the same evidence which was adduced at trial to support the convictions on both of these counts.[9] Thus measured against the "different transaction" analysis it is evident that separate sentences cannot be sustained for what was no more than one transaction. Because the same transaction formed the basis for Gomez's conviction on both Counts II and III of the indictment, we hold that he may not be sentenced separately on each of these counts.

8. On the facts of this case, it is clear that only one transaction was charged and proved. We leave to further refinement in other cases, based upon the record in those cases, the exact parameters of what constitutes the same transaction.

9. In support of the conspiracy count, some evidence was introduced at trial which might suggest that Gomez was in possession of drugs at times and places other than those charged in the second and third counts of the indictment. But because the indictment did not charge Gomez with other instances of possession and because the jury was not instructed as to other instances of possession, we decline to infer that the conviction on the second count of the indictment was based on evidence other than that relating to the April 2, 1975 distribution at Paterson, New Jersey.

10. Although Gomez argues only for vacation of his conviction and sentence under the second count of the indictment, the Notice of Appeal which he filed states that he appeals from the judgment sentencing him under each count of the indictment. We therefore conclude that

## III

Having determined that Gomez may not be separately sentenced for his convictions on both the second and third counts of the indictment, we must now consider the appropriate remedial measures to be taken. Gomez urges that we vacate his *conviction* as well as his sentence on Count II of the indictment, thereby leaving him with a fifteen year sentence on Count III which would run concurrently with the identical sentence on the Count I.[10] The government suggests that we either remand for resentencing in accordance with the principles set forth in *United States v. Corson,* 449 F.2d 544 (3d Cir. 1971) (en banc), or remand with instructions that the district court vacate one of the two challenged sentences.[11] We are of the opinion that *Corson* should be extended to this case.

## A

In *Corson,* we were faced with the problem of reviewing sentences imposed under the federal bank robbery statute, 18 U.S.C. §§ 2113(a), (b), and (d). This statute makes each aspect of a bank robbery a separate offense: entering a federally insured bank with intent to commit a felony[12]

our order in this case may properly extend to the sentences imposed under both the second and third counts of the indictment.

11. In the circumstances presented by this case, Courts of Appeals have often remanded with instructions that the district court vacate one of the two sentences imposed on convictions obtained under 21 U.S.C. § 841(a)(1) for possession with intent to distribute and actual distribution. *E. g., Goodson v. United States,* 564 F.2d 1071 (4th Cir. 1977) (per curiam); *United States v. Henciar,* 568 F.2d 489 (6th Cir. 1977); *United States v. Olivas,* 558 F.2d 1366 (10th Cir. 1977). This procedure enables the sentencing judge to preserve the sentence which he deems to be the most appropriate. Our disposition of the case—remand for imposition of a general sentence on both convictions—also enables the district court judge to effectuate his initial sentencing intent, but does not pose difficulties with respect to the appealability of both convictions.

12. Punishable by up to twenty years incarceration.

[§ 2113(a)], robbery [13] [§ 2113(a)], larceny [14] [§ 2113(b)], and aggravated robbery [15] (i.e., assault with a dangerous weapon in the course of a robbery) [§ 2113(d)]. The defendant in *Corson* had been convicted of entering with intent to commit a felony (Count I), robbery (Count II), and aggravated robbery (Count III). He had been sentenced to ten years on Count I, five years on Count II to run consecutively to the sentence on Count I, and five years probation on Count III to be served at the expiration of the sentences on the two counts.

The Supreme Court in *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), had previously held that Congress did not intend, in creating greater and lesser offenses under the bank robbery statute, to pyramid penalties, and that a defendant could not be given multiple sentences (i. e., a sentence for each separate offense) as punishment for a single bank robbery. Our review of the district court's sentence in *Corson* required no more than that we implement the Supreme Court's holding in *Prince. United States v. Corson,* 449 F.2d at 546.

In grappling with the problem of pyramided sentences, we explicitly rejected a "merger" theory, under which a sentence could only be imposed on the most aggravated offense since, in theory, lesser offenses merged into the greater offense. We noted that:

> Since the evil at which *Prince* was directed was the pyramiding of sentences, we see no reason to ascribe to the above "merger" language the wholly gratuitous effect of limiting a sentence to the most inclusive count. Such an effect is neither necessary to effectuate, nor required by, the holding in the case.

449 F.2d at 549.[16] The "mechanical" application of the merger rule in *Corson* would have required the reduction of a fifteen year prison term to a five year probationary term.[17] This highlights the most glaring problem with the merger theory—the anomalous results which obtain when the most severe sentence is not imposed on the most inclusive offense. 449 F.2d at 548.

In *Corson,* after rejecting the merger doctrine, we went on to hold that the "only practicable way of implementing *Prince* [was] to impose a general sentence on all counts for a term not exceeding the maximum permissible sentence on that count which carries the greatest maximum sen-

---

13. Punishable by up to twenty years incarceration.

14. Punishable by up to ten years incarceration (one year if property valued less than $100 is stolen).

15. Punishable by up to twenty-five years incarceration.

16. The language in *Prince* referred to in the portion of *Corson* quoted in the text reads:
    [T]he unlawful entry provision was inserted to cover the situation where a person enters a bank for the purpose of committing a crime but is frustrated for some reason before completing the crime. The gravamen of the offense is not in the act of entering. * * * Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated. To go beyond this reasoning would compel us to find that Congress intended, by the 1937 amendment, to make drastic changes in authorized punishments. This we cannot do.
    352 U.S. at 328, 77 S.Ct. at 407. (emphasis added).

17. *Corson* also rejected the approach which would retain the sentence most closely approximating the sentencing court's intent, usually by vacating all the sentences except the longest. A district court's imposition of sentence only on a single count after convictions had been obtained on related counts, or this court's vacation of all but a single sentence, would impose substantial barriers to a defendant's ability to obtain full appellate review of those convictions as to which no sentence had been imposed. *United States v. Corson,* 449 F.2d at 550. This is so because the appealable judgment in a criminal case is the sentence imposed on the conviction. *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937). Moreover, such a single sentence procedure might, because of the double jeopardy clause of the fifth amendment, prevent the district court from resentencing a defendant under a valid conviction if the conviction on which the single sentence had been imposed was overturned on appeal. *United States v. Corson,* 449 F.2d at 550–51.

tence." 449 F.2d 551.[18] Accordingly, since it was the "*cumulation* of sentences" which was illegal, 449 F.2d at 551 (emphasis in original), we vacated the sentences on all three counts and remanded for resentencing, with the direction that the district court impose a general sentence on all three counts. Because the merger theory had been rejected, and because the sentencing defect could be corrected by remand for imposition of a general sentence, we were not required to vacate the convictions on any of the counts.[19]

### B

Here, we are faced with a federal statute 21 U.S.C. § 841(a)(1) which creates separate offenses for each of two aspects of a drug transaction: possession with intent to distribute, and distribution. We have held above that, since Congress intended to impose a particular sentence for a single drug transaction, sentences cannot be pyramided with respect to a single instance of distribution—*i. e.*, sentences cannot be imposed for both the offense of distribution and the offense of possession with intent to distribute when both are charged and proved to have taken place at the same time. That principle, and the policy upon which it is predicated, is no different from the principle and the underlying policy in *Corson.*

*Corson* cannot realistically be distinguished from this case on the basis of the different statutes involved. It is true that Gomez was sentenced for violating 21 U.S.C. § 841(a)(1), and not 18 U.S.C. §§ 2113(a), (b) and (d). Yet there is nothing in *Corson* which indicates that we there intended to limit the sentencing principles involved just to the bank robbery statutes. The result we reached in *Corson* was designed to effectuate the congressional intent to prevent sentence pyramiding, and to avoid the anomalies of a technical application of the merger theory. The exact same considerations apply here. The reasons behind our rejections of the merger doctrine in *Corson* are equally applicable here. Moreover, here too we are effectuating Congress' intent in holding that pyramiding of sentences under 21 U.S.C. § 841(a)(1) is impermissible.

### C

We do not believe that our decision in *Corson* has been undermined in any way by the Supreme Court's subsequent decision in *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). In *Gaddis* the defendants had been convicted and sentenced for entering a bank with intent to rob under 18 U.S.C. § 2113(a), bank robbery under 18 U.S.C. § 2113(a), four counts of assault in the course thereof in violation of 18 U.S.C. § 2113(d), and possession of the stolen funds in violation of 18 U.S.C. § 2113(c). They were sentenced to 20 years on the entering count, 20 years on the robbery count, 25 years on each assault count, and 10 years on the possession count, all sentences to run concurrently. Certiorari was granted to enable the Court to clarify the proper application of its previous decisions in *Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959),[20] and

**18.** We noted that, should there be a reversal of one or more counts, the district court would be able to impose a new sentence (as long as it did not exceed the maximum authorized by the remaining counts). We noted as well that such a new sentence could not exceed the sentence originally imposed, so as not to offend the double jeopardy clause, *see Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). 449 F.2d at 551.

**19.** No difficulties of a constitutional dimension are raised by leaving intact separate convictions giving rise to a general sentence in this circumstance. *See United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222

(1976); *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978).

**20.** *Heflin* held that § 2113(c) "was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber." 358 U.S. at 419, 79 S.Ct. at 454. Under this holding, a jury should be instructed that it can convict a defendant for either robbery or receiving, but not for both. *Milanovich v. United States,* 365 U.S. 551, 555, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); *United States v. Gaddis,* 424 U.S. 544, 555, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976).

*Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).[21]

The conviction under § 2113(c) in *Gaddis* was clearly improper in light of the Court's previous holding in *Heflin.* Unlike *Milanovich,* however, a new trial was not required to remedy this error because there was insufficient evidence in the record to sustain the conviction under § 2113(c). The convictions and sentences on the § 2113(c) count of the indictment were therefore vacated. *United States v. Gaddis,* 424 U.S. at 549, 96 S.Ct. 1023. In passing, the Court stated,[22] citing *Prince,* that the concurrent *sentences* for entering with intent and robbery—the § 2113(a) sentences—should be vacated. It should be emphasized that it was only the *sentences* on the § 2113(a) counts which were vacated—the *convictions* on those counts were permitted to stand. 424 U.S. at 544 & n.12, 96 S.Ct. 1023. This refusal to vacate the § 2113(a) *convictions* in *Gaddis,* contrary to the dissent's interpretation of that case, is fully consistent with our disposition here. The Supreme Court's disposition in *Gaddis* thus left the defendants with *convictions* under both the § 2113(a) counts and the § 2113(d) counts, but with *sentences* only under the § 2113(d) counts.

We do not think that these statements can be understood as rejecting *Corson* or as indicating the Supreme Court's adoption of the merger theory. Indeed it is just as plausible to argue that footnote 12 in *Gaddis* is an adoption of the "intent of the sentencing court" theory[23] since in *Gaddis* the district court judge had stated that it was his intention that the defendants receive the maximum sentence of 25 years. 424 U.S. at 546, 96 S.Ct. 1023. *Cf. Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (retaining sentence that would effectuate district court's intention). But we do not think that *Gaddis* can or should be read in this way either. In *Corson* this court considered and rejected both theories. In reviewing the cases which employed each approach, we noted that "regardless of the approach used, the result has almost invariably been to uphold the heaviest sentence and vacate the lighter sentence." 449 F.2d at 547–48 (emphasis omitted). We do not view the Supreme Court's action in *Gaddis* as any more than that. Nor do we believe that the Supreme Court would have necessarily adopted the same approach had it been faced—as we are here—with a situation in which the heaviest sentence had not been imposed for the most inclusive offense. *See Corson,* 449 F.2d at 548–49.[24]

21. *Milanovich* involved a defendant who had been convicted and sentenced for both stealing and receiving under 18 U.S.C. § 641. The Court extended the *Heflin* rationale to this case, holding that the separate convictions could not both stand. A new trial was ordered to remedy this error because, given the evidence in the case, it was not possible to determine what verdict would have been returned or what sentence imposed had the jury been instructed properly.

22. In the text of its opinion, the Court stated:
    Thus, while there was in the present case a "merger" of the convictions under §§ 2113(a) and (d), *Prince v. United States,* 352 U.S. 322 [77 S.Ct. 403, 1 L.Ed.2d 370] the merger could not include the conviction under § 2113(c).
    424 U.S. at 547–48, 96 S.Ct. at 1026.
    Disposition of the § 2113(a) convictions was discussed in a footnote:
    In light of *Prince v. United States,* 352 U.S. 322 [77 S.Ct. 403, 1 L.Ed.2d 370], the concurrent sentences under Counts 1 [the entering count] should also be vacated, leaving the respondents under single 25-year prison sentences for violating 18 U.S.C. § 2113(d). 424 U.S. at 549 n.12, 96 S.Ct. at 1027.

23. *See* note 16 *supra.*

24. As we said in *Corson,* "[o]ne is also struck by the effect the rather convoluted penalty provisions of § 2113 have had upon the various courts' choice of approach." We went on to say:
    Since the heaviest sentence has usually been imposed on the aggravated count, it has done little violence to the intention of the sentencing judge to uphold that sentence on the ground that the lesser offenses *merged into* the most inclusive offenses and no longer formed a proper basis for sentencing.
    Courts have had great difficulty with the merger theory, however, in cases in which the more severe sentence was *not* imposed on the most inclusive offense.
    449 F.2d at 548. (footnotes omitted) (emphasis in original).

■ Because we think that this case is analytically identical to *Corson*, and because we think that *Corson* remains unimpaired by *Gaddis*, we will vacate the separate sentences imposed on Counts II and III and remand for imposition of a general sentence on both counts.[25] In order not to offend any requirement of the double jeopardy clause of the fifth amendment, the general sentence to be imposed by the district court may not exceed a ten year sentence consecutive to the fifteen year sentence imposed on the first count. *See Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874); *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931).

### IV

■ Gomez argues before this court that the district court erred in its charge concerning the specific intent required to sustain a conviction under the second count of the indictment.[26] He argues that the instruction permitting the jury to infer that Gomez "intend[ed] the nature and probable consequences of acts knowingly done or knowingly omitted" impermissibly shifted from the government the burden of proving specific intent beyond a reasonable doubt.

This objection to the charge was not raised before the district court as required by Fed.R.Crim.P. 52(b), and any defect in the charge does not amount to plain error.

In any event, even had an objection been lodged by Gomez, we find no error in the district court's charge. Although it is not proper to charge that the law *presumes* or that a jury *must* infer intent from actions, a charge which instructs that it is *permissible* for a jury to draw such an inference is fully consistent with this court's opinion in *United States v. Garrett*, 574 F.2d 778 (3d Cir. 1978), and with the jury instructions outlined in 1 Devitt & Blackmar, Federal Jury Practice & Instructions § 14.13 (3d ed. 1977), which were specifically approved in our *Garrett* decision.

### V

We will therefore affirm so much of the judgment as sentences Gomez to fifteen years under Count I of the indictment. Insofar as we have found the sentences imposed under Counts II and III to be improper, we will vacate those sentences and remand to the district court for resentencing in accordance with *United States v. Corson*, 449 F.2d 544 (3d Cir. 1971) (en banc). In resentencing in order to impose a general sentence on both Counts, we direct that the general sentence so imposed not exceed a term of ten years consecutive to the sentence imposed under Count I, which we affirm today.

---

**25.** When district courts are required to sentence initially in this type of case, they should follow the instruction of *Corson* and "impose a general sentence on all counts for a term not exceeding the maximum permissible sentence on that count which carries the greatest maximum sentence." 449 F.2d at 551.

**26.** The district court's charge in this regard was as follows:

> If you find that the defendant possessed the cocaine, then you must determine whether he knew that the substance involved was cocaine and then whether he possessed the cocaine with the intent to distribute it.
>
> An act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The purpose of adding the word "knowingly" was to insure that no one would be convicted for an act done because of mistake, or accident, or other innocent reason.

> Members of the jury, knowledge or intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the inner operations of the human mind. You may, however, infer a defendant's knowledge or intent from an examination of the surrounding circumstances. You may, for instance, consider any statement made and done or omitted by a defendant, and all other facts and circumstances in evidence which indicate his state of mind. For example, you have heard testimony by Agents of the Drug Enforcement Administration to the effect that the cocaine they received had a given wholesale or retail value. This evidence, if you find it credible, can be used by you in determining whether the defendant had the requisite intent to distribute the cocaine. It is further ordinarily reasonable to infer that a person intends the nature and probable consequences of acts knowingly done or knowingly omitted. N.T. at 32–33.

GIBBONS, Circuit Judge, with whom ALDISERT, Circuit Judge, joins, dissenting.

In November, 1975, a three-count indictment was returned against the appellant, Pedro Gomez. That indictment charged him with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (Count I), possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count II), and actual distribution of one-half kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count III). A jury returned a verdict of guilty on each count. Gomez, a first offender, was sentenced on Count I to a 15-year term of imprisonment, the maximum provided by §§ 846 and 841(b)(1)(A). He also received a 10-year term on Count II, to be served consecutive to the sentence on Count I, and a 15-year sentence on Count III, to be served concurrent with the Count I sentence. As provided in § 841(b)(1)(A), a special parole term was also imposed on each count.

On this appeal Gomez does not challenge either the merits of his conviction on the conspiracy count or the sentence imposed thereunder. He urges, however, that since the only possession shown in support of the second count was the identical possession involved in the distribution charge (Count III), the separate conviction on Count II was impermissible. We disagree with the majority that a separate judgment of sentence could have been imposed on Count II. Consequently, we would reverse that conviction and vacate the sentence imposed under it.

The statute which details the substantive offense, 21 U.S.C. § 841(a), provides that:

. . . it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

That statutory subsection creates four disjunctive crimes: (1) knowing or intentional manufacture of a controlled substance; (2) knowing or intentional distribution; (3) knowing or intentional dispensing; and (4) knowing or intentional possession with intent to manufacture, distribute or possess. Count II of the indictment charged the fourth crime, which plainly requires both a knowledgeable possession *and* a specific criminal intention. For example, the possession of a controlled substance for personal-consumption purposes is not made a crime by § 841(a)(1). Under § 404(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 21 U.S.C. § 844, possession of controlled substances for purposes other than the three specific purposes listed in § 841(a)(1) is only a misdemeanor, carrying a maximum jail sentence of one year.

Gomez's objection to the judgment of sentence under Count II is fundamental. He urges that when Congress enacted § 841(a)(1) it did not intend to permit conviction both of possession with a specific criminal object and of the accomplishment of that object at the same time and place, when possession was an essential element of such accomplishment. One cannot manufacture, distribute, or dispense a controlled substance without also having possession of it.[1] One can possess a controlled substance with the intention of manufacturing, distributing, or dispensing it and yet fall short of the accomplishment of any of those purposes. Gomez argues that Congress never intended, however, that when the government proved the accomplishment of one of the three criminal purposes, it could also, because that accomplishment required possession, convict the defendant of the separate crime of possession.

The structure of the penalty provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and its rather sparse legislative history lend support to Gomez's contention. In the penalty provisions, Congress carefully differentiated between types of substances and types of offenses. The statute reduces penalties for

---

1. One need not have actual, physical possession of a controlled substance in order to be held to have possession of it. Constructive possession is sufficient.

personal possession,[2] doubles the maximum penalty for distribution to persons under the age of 21,[3] punishes conspiracies separately in the same manner as the substantive object of the conspiracy would be punished,[4] and deals specially with continuing criminal enterprises.[5] Congress rather meticulously integrated the penalty scheme, reserving the most severe penalty, a 15-year term of imprisonment, for those persons who illegally manufacture, sell, or distribute Schedule I or II controlled substances. If, as the government contends, there can be a separate conviction for the possession element of a manufacture, distribution, or dispensation, then the carefully crafted statutory scheme will be thrown entirely out of kilter. Instead of a 15-year term of imprisonment, the maximum sentence for a single distribution could be 30 years—15 years for the distribution and another 15 years for possession with intent to distribute. That maximum would increase to 45 years if the controlled substance were to be distributed to a person under 21 years of age.[6] A 15-year prison term is an extremely severe sentence. We do not believe that Congress intended the possession element of a specific distribution to be sanctioned separately, so as to increase the maximum sentence for a single transaction from 15 years to 30 or possibly 45 years. Rather, we conclude that the possession offense in § 841(a)(1) was intended to apply only where the government cannot prove, with respect to a specific instance of possession, that a manufacture, distribution, or dispensation actually took place.

The majority's only answer to Gomez's proposed statutory construction is this classic non sequitur:

Nothing in the statute indicates any congressional intent to limit the reach of this legislation, which is described in its very title as "Comprehensive." If indeed, as we believe, it was the intent of Congress to proscribe all drug activity, then it follows that separate charges and convictions for each component of the offenses described must necessarily be permitted so as to prevent a drug violator from escaping criminal responsibility.

How a drug violator would escape criminal liability by the reasonable construction of the statute for which Gomez argues is left unexplained, because it is unexplainable. If the government proved possession and intent, without proving distribution, § 841(a)(1) still would apply. Even possession solely for personal use is proscribed in another section of the same law.

In this case the grand jury charged Gomez separately with a possession and a distribution at the same time and place. The government proved a possession for the purpose of distribution and an actual distribution at the time and place. Under the district court's instructions and verdict form, the jury was permitted to return separate verdicts on the separate counts. It should have been instructed that if the evidence established a distribution at the specified time and place, a guilty verdict should be returned on the more inclusive distribution charge alone. Alternatively, when the verdicts were returned on both counts, the district court could well have molded them to provide for a conviction only on the more factually inclusive distribution charge. Those courts which have considered the problem of multiple convictions for the same possession have, by varying rationales, reached essentially the same result which we believe is statutorily required. *See United States v. King*, 521 F.2d 356, 359

---

2. Section 404 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (hereinafter the Act), Pub.L. No. 91–513, 21 U.S.C. § 844.

3. Section 405 of the Act, 21 U.S.C. § 845.

4. Section 406 of the Act, 21 U.S.C. § 846.

5. Section 408 of the Act, 21 U.S.C. § 848.

6. Under the statutory scheme, only the penalty for the distribution offense is doubled if the distribution is to a person below the age of 21. 21 U.S.C. § 845. Thus, if the government's argument were accepted, a 45-year maximum would be achieved by doubling the 15-year sentence for distribution and adding another 15 years for the possession with intent to distribute.

(6th Cir. 1975); *United States v. Stevens*, 521 F.3d 334 (6th Cir. 1975); *United States v. Curry*, 512 F.2d 1299, 1305–06 (4th Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); *United States v. Atkinson*, 512 F.2d 1235, 1240 (4th Cir. 1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976).

The government urges that the conviction on the second count should stand because there is evidence in the record from which the jury could have found possessions by Gomez at times and places other than on April 2, 1975, at Paterson, New Jersey. Concededly, there was some evidence, admitted in support of the conspiracy count, from which such an inference might have been drawn. But the grand jury did not indict the appellant for possession at any other time or place. Moreover, the jury was not instructed respecting Gomez's possession of a controlled substance at any other time or place. It would be the grossest speculation to attribute to the verdict on Count II a finding of possession other than at the specific time and place charged. Properly the majority does not rely on this specious argument.

The government also urges that, even if Gomez has correctly interpreted § 841(a)(1), the appropriate remedy for the error which occurred is to let both convictions stand and to remand the case to the district court for resentencing. In support of the argument, the government cites *United States v. Corson*, 449 F.2d 544 (3d Cir. 1971). We think that the government's reliance on *Corson* is misplaced. First, although we need not decide the issue in this case, we are convinced that even with respect to the federal bank robbery statute, *Corson* does not survive the Supreme Court's decision in *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). In *Corson*, in order to preserve the most serious sentence, this court declined to hold that the less inclusive

charges merged into the more inclusive ones charged. Thus, we remanded for the imposition of a general sentence. In *Gaddis*, however, the Supreme Court recognized that convictions under 18 U.S.C. §§ 2113(a) and (d) merged into the more inclusive § 2113(d) charge. In reaching that decision, the Court stated:

> In light of *Prince v. United States*, 352 U.S. 322 [77 S.Ct. 403, 1 L.Ed.2d 370], the concurrent sentences under Counts 1 and 2 should also be vacated, leaving the respondents under single 25-year prison sentences for violating 18 U.S.C. § 2113(d).

424 U.S. at 549 n.12, 96 S.Ct. at 1027. The majority's effort to read the quoted language as an approval of the *Corson* rule that the remedy will "invariably . . . uphold the heaviest sentence", 424 U.S. at 547–48 (majority opinion p. 218), while perhaps consistent with the spirit which in criminal cases animates this court as one of the most pro-government appellate tribunals in the federal system,[7] is unpersuasive. It ignores what the Supreme Court has repeatedly reaffirmed, namely,

> [that] "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812 [91 S.Ct. 1056, 1059, 28 L.Ed.2d 493] (1971). . . . In various ways over the years, we have stated that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221–222 [73 S.Ct. 227, 229, 97 L.Ed. 260] (1952). This principle is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if

---

7. In recent years the percentage of reversals in criminal appeals in this court has been considerably lower than the national average of Courts of Appeals. Thus, the fiscal year ending June 30, 1978, the national average of reversals was 10.7%, the Third Circuit 7.9%; for 1977, the percentages were 10.3% and 5.3%; for 1976, 10.7% and 7.7%. *See* Annual Reports of the Director of the Administrative Office of the United States Courts, Table B–1, A–4 (1978); Table B–1, 300 (1977); Table B–1, 276 (1976).

a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27 [51 S.Ct. 340, 341, 75 L.Ed. 816] (1931) (Holmes, J.). . . Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies "the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should." H. Friendly, Mr. Justice Frankfurter and the Reading of Statutes, in Benchmarks 196, 209 (1967). Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant. (Footnote and citations omitted.)

*United States v. Bass*, 404 U.S. 336, 347–48, 92 S.Ct. 515, 522–523, 30 L.Ed.2d 488 (1971). *See Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). The majority suggests that the Court in *Gaddis* embraced just the opposite practice, as it has done, of resolving any possible ambiguity in favor of harshness rather than lenity. But the *Gaddis* Court vacated the offending judgments, leaving standing convictions on only the most inclusive charge. It did not endorse the maximizing spirit of *Corson*.

Moreover, without even referring to them, the majority leaves Gomez subject to the collateral consequences which will in the future flow from three rather than two convictions. This court is well aware that in determining eligibility for parole the United States parole board applies mechanical rules with respect to convictions. *See* 28 C.F.R. § 2.20. Its construction has not only upheld the heaviest sentence, but also probably postponed parole eligibility. We do not believe the *Gaddis* Court would tolerate that result.

More importantly, even assuming that *Corson* does survive *Gaddis*, it does not apply to § 841(a)(1). *Corson* was at most an interpretation of the presumed intention of Congress in drafting the bank robbery statute. We certainly did not intend in *Corson* to announce a rule of appellate remedies dependent upon some other statute, such as

28 U.S.C. § 2106. We concluded only that, with respect to the federal bank robbery statute, Congress intended that multiple convictions would stand but that a general sentence would be imposed. There is no such legislative intention evident in § 841(a)(1) in a case where the possession charged separately is the identical possession required for the distribution. In cases where the grand jury charges a separate possession from that required for the distribution, it seems clear that separate convictions and separate sentences are proper. But where, as here, the possession element is common to both charges, we think that Congress intended a conviction to lie on only the most inclusive substantive offense. *See Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). Since we arrive at that conclusion as a matter of statutory interpretation, we have no occasion to discuss whether that result is required by the double jeoparay clause of the fifth amendment. But since the majority construes § 841(a)(1) otherwise, it seems to us that the double jeopardy question demands a less cursory treatment than it has in the majority opinion received.

We would affirm the judgment appealed from with respect to Counts I and III, but vacate the judgment of sentence on Count II.