## UNITED STATES of America

v.

## Charles R. McDONALD.

### Crim. A. No. 80–60–A.

United States District Court,
M. D. Louisiana.

Feb. 5, 1982.

Shelly C. Zwick, Asst. U. S. Atty., Baton Rouge, La., for plaintiff.

William Hawk Daniels, M. Glenn Hawkins, Baton Rouge, La., for defendant.

JOHN V. PARKER, Chief Judge.

Charles Edward McDonald was indicted, along with four others, in a nine count indictment, charging conspiracy to violate various laws as well as violations of law. McDonald was charged in eight of the nine counts: one conspiracy count in violation of 18 U.S.C. § 371, two counts of distribution

of Methaqualone in violation of 21 U.S.C. § 841(a)(1), one count of interstate travel in furtherance of an unlawful activity in violation of 18 U.S.C. § 1952 (R.I.C.O.) and four counts of using communication facilities to facilitate the commission of a felony in violation of 21 U.S.C. § 843(b). Under a plea bargain with the government, McDonald pleaded guilty to Counts I, II and III of the indictment and the remaining counts against him were dismissed. Each of McDonald's co-defendants pled guilty to Count I, the conspiracy charge, and the remaining charges against each of them were also dismissed.

McDonald was sentenced to imprisonment for five years and to pay a fine of $10,000 on each of the three counts of which he was convicted, each sentence to run consecutively. In addition, a special parole term of 25 years was imposed as to Counts II and III.

A Rule 35 motion for reduction of sentence has been previously considered and denied. Defendant now moves under 28 U.S.C. § 2255 to vacate, set aside or to correct the sentence imposed. He assigns several reasons in support of his request to withdraw his plea of guilty. An evidentiary hearing was held on September 17, 1981 and, upon request of counsel for McDonald, the transcript of the hearing was completed prior to the filing of post-trial briefs. The matter has now been submitted to the court upon briefs filed by both sides.

We consider McDonald's contentions.

■ The Sentence.

As noted earlier, McDonald pleaded guilty to three counts.

Count I charged that the defendants conspired to receive and to possess unregistered firearms in violation of 26 U.S.C. § 5861(d) and that they conspired to possess with intent to distribute Methaqualone ("quaaludes") in violation of 21 U.S.C. § 841(a)(1), all of which is charged as a violation of 21 U.S.C. § 871.

Count II charges that McDonald and co-defendant, Edward Kenneth Gantt distributed some 53,000 "quaalude" tablets on July

17, 1980 in violation of 21 U.S.C. § 841(a)(1).

Count III charges that McDonald, Gantt and co-defendant Joseph E. Krohn distributed some 212,000 additional "quaalude" tablets on July 21, 1980 in violation of 21 U.S.C. § 841(a)(1).

The apex of McDonald's criminal activities was a scheduled exchange of some 275,-000 "quaalude" tablets for $165,000 plus 165 machine guns, five silencers, six hand grenades and 200 pounds of explosives.

McDonald and Gantt delivered 53,000 tablets on July 17, 1980. McDonald, Gantt and Krohn were arrested on July 21st when they delivered the remaining 212,000 "quaaludes" and took possession of the money and the weapons. Unbeknownst to McDonald, the person he was negotiating with for the weapons was a federal undercover agent.

McDonald contends that he cannot be sentenced separately on all three counts. He argues, first, that all three counts charge violations of 21 U.S.C. § 841(a)(1), that there was only one transaction or "sale," that the same evidence would prove all three charges, and thus there can only be one sentence or at least the sentences must be modified so as to run concurrently, not consecutively.

■ McDonald misreads Count I of the indictment; it does *not* charge a violation of 21 U.S.C. § 841(a)(1). Although its language is archaic, ponderous and verbose, (as are virtually all federal indictments) Count I specifically charges a conspiracy to violate two criminal laws—one relating to guns [26 U.S.C. § 5861(d) ] and the other relating to drugs [21 U.S.C. § 841(a)(1) ]. The conspiracy to violate the law is made criminal by the provisions of 21 U.S.C. § 871 and that is the violation charged in Count I.

■ Although some of the overt acts which are alleged in the conspiracy count are the predicate for subsequent counts charging substantive violations, it is well settled that separate, consecutive sentences may be imposed for criminal conspiracy under 21 U.S.C. § 871 and for the commission

of substantive offenses committed in furtherance of the conspiracy. *See United States v. Ocanas*, 628 F.2d 353 (5th Cir. 1980) (and cases cited therein); *United States v. Lewis*, 621 F.2d 1382 (5th Cir. 1980).

McDonald's contention regarding Counts II and III is predicated upon the established fact that (excluding a few minor preliminary matters) there was to be only one exchange or transaction or "sale." McDonald and his associates were to provide "quaaludes" in exchange for cash and weapons. Thus, defendant argues that the July 17th delivery of 53,000 tablets was only a partial delivery of what was only one transaction and that the July 21st delivery of the remaining 212,000 tablets was simply the balance due. The defendant then argues that since there was only one such exchange or "sale" there can be only one offense.

In support of that proposition, defendant relies upon the case of *United States v. Ferguson*, 498 F.2d 1001 (D.C.Cir.1974) *cert. den.* 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 145.

There the charge was "sale" of heroin under the prior narcotics laws (since repealed) 26 U.S.C. §§ 4704(a)–4405(a) and 21 U.S.C. § 174. That case did indeed hold that one sale of drugs, although delivered on two separate days, was still only one sale and that separate sentences could not be imposed. The decision was, however, based upon the language of the applicable statute which prohibited the *sale* of narcotics. McDonald is not charged with the sale of "quaaludes;" he is charged with *distribution* of "quaaludes" on two separate days. As the government correctly points out in its brief, 21 U.S.C. § 841(a)(1) is a part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, and it specifically makes it unlawful to *distribute* drugs. "Distribution" is defined as "to deliver" a prohibited substance, 21 U.S.C. § 802(11), and "deliver" means the "transfer of a controlled substance."

■ Thus it was proper for the government to charge McDonald with distribution of 53,000 "quaaludes" on July 17th and with a separate offense in distributing 212,000 "quaaludes" on July 21st, each delivery being a separate crime.

21 U.S.C. § 841(a)(1) prohibits possession of controlled substances with intent to distribute as well as distribution of such substances. McDonald cites *United States v. Hernandez*, 591 F.2d 1019 (5th Cir. 1979) and *United States v. Gomez*, 593 F.2d 210 (3rd Cir. 1979), both of which did involve prosecutions under § 841(a)(1), for the proposition that Counts II and III involve only one "sale" and thus only one sentence can be imposed.

The cited cases both involve separate counts, one charging possession with intent to distribute drugs and the other charging distribution of the same drugs. The issue presented in both cases was whether there can be double punishment for violation of the two phases of § 841(a)(1) (possession with intention to distribute on the one hand and the actual distribution on the other hand) in a single transaction. Both courts held that under the circumstances before them, there could be only one sentence.

■ Without debating the correctness of the holdings in *Hernandez* and *Gomez, supra*, it is apparent that both cases are inapposite here. McDonald is not charged with possession and distribution of the same drugs; on the contrary, he was charged with distribution of 53,000 tablets on one day and with distribution of 212,000 tablets four days later. As noted above, under § 841(a)(1), each separate *delivery* of a controlled substance is a separate crime, without regard to whether each delivery was only a portion of the total to be delivered in connection with the transaction.

McDonald was properly charged and convicted of Counts I, II and III of the indictment. Each sets forth a separate and distinct criminal offense for which a separate sentence may lawfully be imposed.

■ The Alleged Unconstitutional Failure of the Prosecution to Disclose Evidence.

The 2255 motion alleges that one of the co-defendants, Virginia Dawm Kimes, was an informer and "government agent" who "set-up" and entrapped McDonald and that the government failed to disclose this information to the defendant. McDonald contends that this unconstitutionally deprived him of a fair trial and that it mandates withdrawal of his guilty plea.

During the course of pretrial motions in this case, Kimes' alleged status as a "government agent" was repeatedly aired. McDonald and his counsel were informed by the U.S. Attorney's office that at some time in the past she had apparently been an informer for some governmental agency. The U.S. Attorney insists that it provided the defendants all the information which it had regarding her past activities and no evidence to the contrary has been presented in support of this motion.

One of the tapes of telephone conversations recorded during the investigation of this offense, indicated that a state police officer had paid Kimes or was going to pay her for information about a matter unrelated to the McDonald transactions. A transcript of that tape was delivered to McDonald's attorney and the tape itself was made available but no evidence has ever been presented that Kimes acted as a government agent in this case. In fact, the available indications are to the contrary.

■ McDonald also contends that his 2255 hearing was unfair because the court declined to order Kimes transferred from her present place of incarceration (she was sentenced to five years in prison) to Baton Rouge at government expense. Defendant contends that he could not afford to pay the cost of transporting Kimes and that her testimony was an essential part of his case and would establish that Kimes was in fact a government agent who entrapped him.

McDonald declined to execute a forma pauperis affidavit on the grounds that it would tend to incriminate him but he insists that the court should have realized his impecunious status and ordered that Kimes be transported here for the hearing.

Mover has produced no evidence that Kimes would, in fact, testify as he alleges and his unsupported assertion is simply insufficient. *United States v. Cawley*, 481 F.2d 702 (5th Cir. 1973); *United States v. Boyd*, 620 F.2d 129 (6th Cir. 1980).

We note in passing that attached to the motion is the affidavit of a Mr. F. L. Pourciau who is identified as Chief of Police of Grosse Tete', Louisiana. In that affidavit, Mr. Pourciau indicates that he has some information indicating that Kimes has identified herself as being connected with "the justice department." Mr. Pourciau was not called as a witness at the 2255 hearing although Grosse Tete' is within this district and not more than fifteen miles from the courthouse. Mr. Pourciau, if he has pertinent information, certainly could have been present as a witness at the 2255 hearing.

While this court will not hesitate to set aside a conviction predicated upon information concealed from or upon false or misleading information furnished to the defendant, there is simply no evidence that such is the case here.

■ Alleged Ineffective Assistance of Counsel.

■ McDonald's motion alleges that his guilty plea was predicated upon the "oral promise" of his then attorney that McDonald would not be sentenced to more than seven years in prison. He alleges that his former attorney led him to believe that the seven year sentence had been agreed to by the U.S. Attorney and the judge.

At the time McDonald entered his plea of guilty, the procedure required by Rule 11, Fed.R.Crim.P., was followed and he acknowledged that he was aware that he could be sentenced to three consecutive five year sentences, or a maximum of fifteen years and also declared that no one had given him any prediction or prophecy about what sentences might actually be imposed.

At the 2255 hearing, McDonald himself admitted that his former attorney simply told him that the maximum sentence on the three counts was fifteen years but it was his opinion, because McDonald had no prior

 

convictions, that the judge would not sentence him to more than ten years and that McDonald would probably serve no more than seven before he was paroled.

He also admitted that the allegation contained in "Exhibit B" attached to his 2255 petition to the effect that his former attorney told him that the judge would not put the sentence agreement in writing, is not true. What the attorney actually told him was that the judge would not become involved in any plea bargain.

The former attorney verified that information and further verified that there was no agreement on sentence with anyone and that he had not told McDonald that there was an agreement with the judge. The attorney's testimony was to the effect that he gave his client his best effort and advice. He testified that McDonald was going to trial on eight counts, the attorney advised McDonald that the entrapment plea would not stand, that his best course was to plead guilty to three counts and that the attorney thought that the judge would make at least one of the sentences run concurrently. The attorney further testified that he was "shocked" when his client was sentenced to three consecutive five year sentences, the maximum term for imprisonment on each count.

The author of this opinion can personally attest that McDonald's former counsel was active, alert, aggressive and effective in his representation of his client. The fact that the sentence was more than anticipated is no reflection upon the attorney's effectiveness and gives no cause to McDonald to withdraw his plea of guilty. *Johnson v. Massey*, 516 F.2d 1001 (5th Cir. 1976).

McDonald has not shown any instance in which he was not competently represented and he now admits that there was no "deal" regarding his sentence.

 Conclusion.

The court has carefully considered each of McDonald's other contentions and concludes that they are not persuasive. The sentence meted to McDonald was within the punishment prescribed by law for the offenses of which he has been convicted and was imposed only after a careful consideration of all of the information available to the court at the time of sentence, including the magnitude of the drugs and weapons scheme of which he was undisputably the boss and ringleader.

For the foregoing reasons, the motion to vacate, set aside or correct sentence is hereby DENIED.