**UNITED STATES of America, Appellee,**

v.

**Cirilo MENDOZA, Appellant.**

**No. 89–1609SI.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1989.

Decided May 7, 1990.

Joseph G. Bertogli, Des Moines, Iowa, for appellant.

Ronald M. Kayser, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge; ARNOLD, Circuit Judge; and McMILLAN,* District Judge.

McMILLAN, District Judge.

Cirilo Mendoza was convicted of (1) conspiring to distribute cocaine (in violation of 21 U.S.C. § 846); (2) possessing cocaine with intent to distribute it (in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii), and 18

---

* JAMES B. McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.

U.S.C. § 2); (3) distributing cocaine (also in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii), and 18 U.S.C. § 2); and (4) using a telephone to facilitate distribution of cocaine (in violation of 21 U.S.C. § 843(b) and (c)). Mendoza appeals his conviction on two grounds. He argues that there was insufficient evidence for the jury to convict him, and that the trial court[1] erred when it sustained his convictions for both the possession and distribution charges. For the reasons set forth below, the judgment of the trial court is affirmed in part and remanded with instructions.

## I. BACKGROUND

On approximately September 26, 1988, Marcellino Ramirez contacted the Drug Enforcement Administration ("DEA") in Des Moines, Iowa, and informed an agent that Cirilo Mendoza was a cocaine dealer in Muscatine, Iowa who was looking for customers. On September 27, DEA agent Steve Hummel made the first of several taped telephone calls to Mendoza in order to negotiate the purchase of one kilogram of cocaine. During these phone conversations, Mendoza repeatedly told Hummel he would have to obtain the cocaine before he could fix a date for delivery. Finally, on the morning of October 5, Hummel telephoned Mendoza in Muscatine and learned that Mendoza had the cocaine. The two men agreed that Mendoza would deliver the cocaine to Hummel in a Burger King parking lot in Des Moines, Iowa, at 4 p.m. that afternoon. Mendoza appeared at the parking lot at the appointed time, distributed approximately one kilogram of cocaine to Hummel, and was promptly arrested.

Mendoza was charged with conspiring to distribute cocaine; possessing one kilogram of cocaine with intent to distribute it on or about October 5, 1988; distributing the kilogram of cocaine on or about October 5, 1988; and using a telephone on five separate occasions in furtherance of the conspiracy.

At trial, Mendoza raised the defense of entrapment and testified that he only became involved in the drug transaction at the instigation of informant Ramirez. According to Mendoza, Ramirez had approached him in 1987 and asked him whether he wished to buy or sell drugs. Mendoza said that he had rejected Ramirez, but that in September of 1988 Ramirez renewed his overtures and repeatedly telephoned Mendoza with various proposals. At one point, Mendoza stated, Ramirez offered to pay him $3,600 to deliver cocaine to a buyer. Mendoza said he agreed to this proposal. Afterwards, Mendoza testified, he received phone calls from Steve Hummel, but Mendoza stated that Ramirez had instructed him on how to conduct the negotiations. Mendoza also said that, at Ramirez's directions, he picked up the cocaine from a Muscatine park and delivered it to Hummel.

Marcellino Ramirez's testimony differed considerably from that of Mendoza. According to Ramirez, Mendoza offered to sell drugs to Ramirez, flashed rolls of money, and asked Ramirez to refer customers to him. Ramirez said he did approach Mendoza in 1987 about buying or selling drugs, but said that Mendoza had told him that Mendoza had all the drugs he needed to supply his customers. Ramirez stated that in September of 1988, he asked Mendoza if he could give Mendoza's telephone number to a prospective buyer, and that when Mendoza agreed, Ramirez contacted the DEA. Ramirez admitted that the DEA paid him for this information, but denied that he had directed Mendoza's negotiations or that he had supplied the cocaine distributed by Mendoza.

The jury found Mendoza guilty of all of the offenses with which he was charged. Mendoza subsequently filed a motion for judgment of acquittal, which the court denied. He was given a single sentence of 66 months imprisonment for the conspiracy, possession and distribution offenses. He was sentenced to 48 months imprisonment for the remaining counts, to be served concurrently, and was ordered to pay a special assessment of $400.

---

1.  CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa.

## II. ISSUES

### A. Sufficiency of the Evidence

Mendoza first contends that the evidence presented to the jury demonstrated entrapment, and that the government failed to prove beyond a reasonable doubt that he was predisposed to commit the offenses of which he was convicted.

■ In order to persuade the court that the motion for judgment of acquittal should have been granted, Mendoza must demonstrate entrapment as a matter of law. The evidence must show that (1) a government agent originated the criminal design; (2) the agent implanted in the mind of an innocent person the disposition to commit the offense; and (3) the defendant committed the crime at the agent's instigation. *United States v. Resnick*, 745 F.2d 1179, 1186 (8th Cir.1984); *United States v. Shaw*, 570 F.2d 770, 772 (8th Cir.1978). If evidence regarding the defendant's predisposition is conflicting, the issue is properly submitted to the jury. *United States v. Shaw*, 570 F.2d at 772.

■ The record shows two widely divergent versions of whether Mendoza was predisposed to commit the crimes with which he was charged. According to Mendoza's testimony, until Ramirez repeatedly approached him, he had *no* inclination to engage in criminal activity. However, according to Ramirez, Mendoza had represented himself to Ramirez as being involved in selling drugs, and even offered to sell drugs to Ramirez. In these circumstances, the judgment of acquittal was properly denied.

Reviewing the record in the light most favorable to the government, *Resnick*, 745 F.2d at 1186, the court concludes that there was sufficient evidence for the jury to find that Mendoza was predisposed to commit the crimes with which he was charged. Evidence showed that Mendoza had prior experience in drug dealing and willingly agreed for Ramirez to give his name to a potential customer in September 1986. In addition to the incriminating testimony of Ramirez, tapes of the telephone conversations between Mendoza and Hummel indicate that Mendoza was familiar with the terms used by drug traffickers and was an effective bargainer.

■ Mendoza also contends that the government's conduct was so outrageous as to require acquittal. *See United States v. Gardner*, 658 F.Supp. 1573 (W.D.Pa. 1987). According to his portrayal of events, the government's paid informant harassed him until he agreed to commit a crime, and then provided the client, the advice, and the cocaine with which to commit it. Again, however, Ramirez's testimony conflicted with that of Mendoza on this issue, and it was proper to permit the jury to evaluate the credibility of the witnesses. *See United States v. Cegelka*, 853 F.2d 627, 629 (8th Cir.1988). The court concludes that the jury reasonably could have decided to believe Ramirez's account.

### B. Separate Convictions Under 21 U.S.C. § 841(a)(1)

Cirilo Mendoza contends that he was erroneously convicted of both (1) *possessing* a one-kilogram package of cocaine with *intent to distribute* it on October 5, 1988, under 21 U.S.C. § 841(a)(1), and (2) *distributing* that same kilogram of cocaine later on the same day, also under 21 U.S.C. § 841(a)(1). Mendoza contends that the two offenses were based on the same transaction, and argues that the conviction for possession with intent to distribute is surplusage and should therefore be set aside.

Section 401(a)(1) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Drug Act") states that:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance.

In order to cast its net as broadly as possible, the Drug Act is structured in such a way as to criminalize successive stages of a single undertaking. Though a defendant can be *charged* with multiple *offenses* un-

der this section, *United States v. Palafox*, 764 F.2d 558 (9th Cir.1985), Congress did not intend for a defendant to be *cumulatively punished* for two or more offenses based on the *same act*. *See United States v. Gomez*, 593 F.2d 210 (3rd Cir.), *cert. denied* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979); *Palafox*, 764 F.2d 558; *United States v. Curry*, 512 F.2d 1299 (4th Cir.), *cert. denied* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); *United States v. Stevens*, 521 F.2d 334 (6th Cir.1975).

### 1. Mendoza's Punishment

■ The first question that must be addressed is whether Mendoza's two separate *convictions* under § 841(a)(1) expose him to *cumulative punishment,* or whether his challenge is moot.

Mendoza was sentenced under the federal sentencing guidelines. Pursuant to the guidelines, three of Mendoza's separate convictions (for possessing with intent to distribute, for distributing, and for conspiring to distribute the one kilogram of cocaine) were *grouped together* for purposes of sentencing. Based on the *aggregate quantity* of drugs involved—the single kilogram of cocaine—the trial court determined that Mendoza had a "base offense level" of 26 and a sentencing range of 63 to 78 months. *See* U.S.S.G. § 2D1.1 and § 3D1.1–1.3. The trial court then selected a sentence of 66 months imprisonment for the possession, distribution and conspiracy offenses. In choosing this sentence from the guidelines range, however, the trial court had the *discretion* to "consider, without limitation, any information concerning the background, character and conduct of the defendant," U.S.S.G. § 1B1.4, including the *number of offenses* of which he had been convicted.

The court cannot be certain that the sentence selected by the trial court was not increased because of Mendoza's second conviction under § 841(a)(1). The trial court chose the 66–month term of imprisonment *"in part* because the amount of cocaine involved is toward the lower end of the range." Transcript of Sentencing, at 38 [emphasis added]. This statement does not foreclose the possibility that Mendoza's sentence was also increased because of his separate convictions under § 841(a)(1) for possession with intent to distribute and for distribution. If the trial court did increase Mendoza's sentence based on his separate convictions, the *sentence* may constitute cumulative punishment.

The court must also consider whether Mendoza's second *conviction* under § 841(a)(1) by itself carries punitive collateral consequences. Several circuits have concluded that defendants charged with two or more offenses under § 841(a)(1) are shielded only from receiving multiple *sentences,* not multiple convictions. *See, e.g., Gomez,* 593 F.2d at 215–16 (3rd Cir.); *Stevens,* 521 F.2d at 337 (6th Cir.). The rationale behind this approach is that a conviction by itself is not prejudicial, *Stevens,* 521 F.2d at 337, and that the government must be permitted to obtain separate convictions under the Drug Act in order to fulfill the Act's statutory purpose of preventing offenders from escaping responsibility in the event that a factually more inclusive conviction were reversed. *Gomez,* 593 F.2d at 213.

However, the view that a second conviction by itself is harmless has been rejected by the Supreme Court. In *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the Court held that a felon could not be convicted of and concurrently sentenced for receiving a firearm under 18 U.S.C. § 922(h)(1), and possessing the same weapon under 18 U.S.C.App. § 1202(a)(1). The Court ruled that "[o]ne of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense," 470 U.S. at 864, 105 S.Ct. at 1673, and ordered the trial court to vacate one of the underlying convictions. According to the Court,

[t]he separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defen-

dant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

470 U.S. at 856, 105 S.Ct. at 1668–69 (citations omitted; emphasis in the original). In *United States v. Maull*, 806 F.2d 1340 (8th Cir.1986), *cert. denied* 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987), this circuit followed the holding in *Ball* and ruled that a defendant could not be convicted of and sentenced for both conspiring to distribute cocaine under 18 U.S.C. § 846, and engaging in a continuing criminal enterprise under 18 U.S.C. § 848. *See also United States v. Howard*, 507 F.2d 559 (8th Cir.1974); *Palafox*, 764 F.2d at 564 (staying entry of judgment of conviction on one of defendant's convictions under § 841(a)(1)).

Under the *sentencing guidelines*, Mendoza is not eligible for parole. P.L. 98–473 § 218(a), 98 Stat. 2027 (repealing 18 U.S.C. §§ 4161 *et seq.*, governing parole). Further, if in the future Mendoza commits a *federal* offense, the guidelines provide that his criminal history will be calculated based on prior sentences, and not on the number of underlying convictions. U.S.S.G. § 4A1.2. However, Mendoza's multiple convictions still have potential adverse consequences. They may be taken into account under *state* recidivist statutes in the event Mendoza violates state criminal law. *Benton v. Maryland*, 395 U.S. 784, 789, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969). As the Supreme Court observed in *Ball*, the multiple convictions may be used to impeach him, and they carry a social stigma. The court also notes that, based on his second conviction under § 841(a)(1), Mendoza has been required to pay an additional assessment of fifty dollars under 18 U.S.C. § 3013. The court therefore concludes that the two separate *convictions* under § 841(a)(1) are not mere surplusage, but may constitute cumulative punishment.

## 2. Were Both Convictions Based on the Same Act

■ The next issue that must be considered is whether, under the facts of this case, Mendoza's separate offenses under § 841(a)(1) are based on the *same act* for which only one conviction is appropriate. The majority of circuits have taken the view that a defendant cannot be punished for two offenses under § 841(a)(1) unless the violations arise out of two separate transactions. *Gomez*, 593 F.2d 210 (3rd Cir.); *Palafox*, 764 F.2d 558 (9th Cir.); *Curry*, 512 F.2d 1299 (4th Cir.); *Stevens*, 521 F.2d 334 (6th Cir.); *United States v. Olivas*, 558 F.2d 1366 (10th Cir.), *cert. denied* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977). Stated another way, the permissibility of multiple punishment turns upon whether the underlying offenses arise "from a single criminal undertaking involving drugs, and each offense is committed at virtually the same time, in the same place, and with the same participants." *Palafox*, 764 F.2d at 562.

Applying this rule, courts have held that where evidence of distribution of an illegal substance is the only evidence to support a separate possession charge, the defendant cannot be punished for both offenses. In *Palafox*, the defendant transferred a package of heroin to an undercover agent and was charged under § 841(a)(1) with both distributing the heroin and possessing it with intent to distribute. Observing that there was no evidence that the defendant possessed the heroin prior to the moment of distribution, the court concluded that the offenses charged were directed at a single criminal undertaking and held that the defendant could be punished for only one offense. *See also United States v. Sanford*, 673 F.2d 1070 (9th Cir.1982) (defendant's consecutive sentences for possession and transfer of counterfeit notes under 18 U.S.C. §§ 472 and 473 held invalid where no evidence of possession prior to transfer); *Stevens*, 521 F.2d 334 (defendant improperly sentenced for possession and distribution charges under § 841(a)(1) based solely on evidence that he distributed heroin to undercover agent).

As the government points out, the evidence here shows that Mendoza possessed

the cocaine prior to distributing it. The government seeks to analogize the facts of this case to other cases in which courts have upheld separate punishment for multiple offenses arising under § 841(a)(1) or analogous statutes. However, these cases involve situations where the defendant possessed contraband for a significant period of time before its delivery, or only distributed a portion of what he or she possessed. Thus, in *United States v. Palacios*, 835 F.2d 230 (9th Cir.1987), the court upheld the defendant's consecutive sentences for possessing and passing counterfeit bills in violation of 18 U.S.C. § 472, where the defendant transferred only some of the counterfeit bills in his possession. In *United States v. Wolf*, 813 F.2d 970 (9th Cir. 1987), the court upheld the defendant's separate convictions under 18 U.S.C. §§ 2312 and 2313 for transporting a stolen van in foreign commerce and for possessing it while transporting it. The court based its decision on evidence that the defendant had possession of the van for three days but was apprehended in a town only three hours from where he had stolen it. *See also United States v. Crachy*, 800 F.2d 83 (6th Cir.1986), *cert. denied*, 479 U.S. 1042, 107 S.Ct. 905, 93 L.Ed.2d 856 (1987) (defendant's separate sentences for possessing and passing counterfeit bills upheld, where he had possessed the bills for several years); *United States v. Carcaise*, 763 F.2d 1328 (11th Cir.1985), (defendant was properly sentenced for distributing diazepam and for possessing diazepam with intent to distribute it, where he had the drug in stock in a warehouse prior to distribution).

After reviewing the record, the court finds that the facts of this case are more analogous to *Palafox* and its kind than to *Palacios* or *Wolf*. Mendoza was convicted separately of possessing with intent to distribute and then distributing the *same quantity* of cocaine on the *same day*. These offenses were separate stages of a single drug transaction: the distribution of the kilogram of cocaine to agent Hummel. There is no evidence that Mendoza possessed additional cocaine that he did not actually distribute, or that he had kept the cocaine in stock prior to October 5. Even though Mendoza had possession of the kilogram of cocaine for three to four hours more than was necessary physically to deliver it to Des Moines, this brief period of possession does not establish that he was engaged in stockpiling the drug. The court therefore concludes that Mendoza's separate convictions for distributing cocaine and for possessing cocaine with intent to distribute are based on the same act. One of these convictions is impermissible punishment under § 841(a)(1).

Accordingly, this case is remanded to the district court with instructions to vacate one of the convictions under 18 U.S.C. § 831(a)(1), to decrease by fifty dollars the amount assessed on Mendoza under 18 U.S.C. § 3013, and to resentence Mendoza. The judgment is otherwise affirmed.