Petitioner: The **PEOPLE** of the State of Colorado,

v.

Respondent: **Benad ABIODUN.**

No. 03SC690.

Supreme Court of Colorado.

May 2, 2005.

John W. Suthers, Attorney General, Jennifer M. Smith, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Keyonyu X. O'Connell, Deputy State Public Defender, Denver, for Respondent.

COATS, Justice.

The People sought review of the court of appeals' judgment in *People v. Abiodun,* 87 P.3d 164 (Colo.App.2003), vacating both of the defendant's convictions for possession of

a controlled substance. The jury returned guilty verdicts, and the district court entered separate judgments of conviction, on two counts of possession and two counts of distribution, as proscribed by section 18–18–405 of the revised statutes. One set of convictions for possession and distribution arose from the defendant's conduct on each of two separate occasions, six days apart. The court of appeals vacated the defendant's convictions for possession, holding that possession and distribution on each occasion were committed as part of the same transaction and merged.

Because section 18–18–405 defines a single offense, and because the evidence at trial did not support a finding that the defendant committed the offense defined by section 405 more than once on either occasion, two convictions for the defendant's conduct on each occasion violated the double jeopardy clause. The judgment of the court of appeals vacating the convictions for possession is therefore affirmed.

## I.

The defendant was charged with separate counts of possession and distribution of a schedule II controlled substance, as proscribed by section 18–18–405(1)(a), 6 C.R.S. (2000), for his conduct on June 21, 2001; and with separate counts of possession and distribution for his conduct on June 27, 2001. The jury returned guilty verdicts on all four counts, and the district court entered judgment on each and sentenced the defendant to four, concurrent four-year terms in the Colorado Department of Corrections.

The uncontradicted evidence at trial indicated that on June 21, a paid police informant called the defendant's residence to arrange to buy cocaine. The informant spoke over the telephone with the defendant's wife and arranged the deal. When the informant arrived at the defendant's apartment that afternoon, he was told by the defendant's wife that he would have to wait for the defendant's return. When the defendant arrived, he spoke with his wife, drove away, and returned about ten minutes later. Shortly thereafter, the informant came out, told a waiting officer that he had made the purchase, and turned over a quantity of crack cocaine to the officer. On June 27, the same informant arranged another transaction, and along with an undercover officer, met the defendant in a parking lot. Immediately after producing a bag of crack cocaine, the defendant was arrested.

The defendant testified on his own behalf, admitting the sales and asserting an affirmative defense of duress. The defendant testified that on both occasions he was acting at the request of his wife, who was a drug addict and who had been threatened by the informant. He testified that on June 21, when his wife asked him to procure the drugs, he left, returned home with them, and gave them to his wife, who handed them to the informant. He testified that on June 27, his wife again requested that he obtain drugs, which he did, and within thirty minutes of returning home, he drove to the parking lot to complete the transaction.

Although it rejected the defendant's other assignments of error, the court of appeals held that where possession and distribution were committed during the same transaction and the same time period, and where the defendant's possession was necessary and incidental to his act of distribution, convictions for both offenses must merge. Because it concluded that the only evidence of the defendant's possession was that he acquired the drugs from a third party for distribution to the informant, it ordered the defendant's separate convictions for possession to be vacated.

We granted the People's petition for a writ of certiorari.

## II.

Subject to constitutional limitations, it is the prerogative of the legislature to define crimes and prescribe punishments. *Sanabria v. United States,* 437 U.S. 54, 69–70, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Woellhaf v. People,* 105 P.3d 209, 215–20 (Colo.2005); *Martinez v. People,* 69 P.3d 1029 (Colo.2003). While the double jeopardy clauses of both the federal and state constitu-

tions [1] protect an accused from (among other things) multiple punishments for the same offense, this aspect of the constitutional limitation actually embodies a concern for the separation of governmental powers and manifests more as a rule of construction than a limitation on the authority of the legislature. *See Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Boulies v. People*, 770 P.2d 1274, 1278–79 (Colo. 1989). As long as the general assembly makes clear its intent to punish the same offense with more than one conviction and sentence, it is not constitutionally prohibited from doing so. *See Missouri v. Hunter*, 459 U.S. at 368–69, 103 S.Ct. 673; *Boulies*, 770 P.2d at 1278–79.

By the same token, precisely because it is the legislature's prerogative to define crimes and prescribe punishments, an accused may not be convicted more than once, even where there would otherwise be no constitutional impediment to doing so, unless the legislature has chosen to permit it. In this jurisdiction, an accused may not be convicted of two offenses if one is included within the other, § 18–1–408(1)(a), C.R.S. (2004); and an offense is so included if it is established by proof of the same or less than all the facts required to establish the commission of the other § 18–1–408(5)(a). We have on numerous occasions referred to this standard as the "statutory elements test," or the *"Blockburger* test," equating it with the test developed in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as a means of assessing whether separate statutory offenses will be considered the same in applying the constitutional protection against being twice placed in jeopardy for the same offense. *See Meads v. People*, 78 P.3d 290 (Colo.2003).

Logically preliminary to the question whether one offense is the same as or included within another, is the question whether the legislature intended to create two separate offenses at all. It is the legislature's choice to treat a course of conduct, or various acts that it considers to be related in time, nature, or purpose (or in any other way) as one or as more than one offense. *See People v. Williams*, 651 P.2d 899, 903 (Colo.1982) (citing *Sanabria*, 437 U.S. at 69–70, 98 S.Ct. 2170). For a host of reasons, including not only its assessment of the appropriateness of multiple punishments but also the practical consequences of requiring that similar or related acts be distinguishable, the legislature may very well choose to define a series of acts, related along a continuum of conduct or motivated by a single objective, for example, as a single crime.[2] *E.g., Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) (Congress' prerogative to proscribe the robbing of a federal bank and merely entering with the intent to rob it, as the same crime).

Where the general assembly proscribes conduct in different provisions of the penal code and identifies each provision with a different title, its intent to establish more than one offense is generally clear. Unless all of the elements of a separately-designated offense are included among the elements of another, and therefore the one is considered the same as, or included within, the other, *see Blockburger*, 284 U.S. at 304, 52 S.Ct. 180 a legislative intent to permit separate punishments for each can be presumed. *See Albernaz v. United States*, 450 U.S. 333, 341–42, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *see, e.g., Meads*, 78 P.3d at 291–92 (holding that where theft and aggravated motor vehicle theft were proscribed by different statutes and the latter was not included within the former, the defendant could suffer convic-

---

1. U.S. Const. amend V; Colo. Const. art. II, § 18.

2. Although not specifically defining the term, the Supreme Court, in cases involving more than one violation of a single statute, has referred to "the offense which the legislature intended to create," as the "unit of prosecution," *see Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *Bell v. United States*, 349 U.S. 81, 75

S.Ct. 620, 99 L.Ed. 905 (1955); *see also* Note, *Twice in Jeopardy*, Yale L.J. 262, 313 (1965), and has held that "once Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution' ... that prescription determines the scope of protection afforded by a prior conviction or acquittal." *Sanabria*, 437 U.S. at 70, 98 S.Ct. 2170 (citations omitted).

tions of both). Where, however, a number of acts are joined as a disjunctive series, in a single sentence, without any attempt to differentiate them by name or other organizational device, a legislative intent to permit separate convictions and sentences for each enumerated act is not so readily apparent and must be ascertained, if at all, by other aids to statutory construction.

■ In 1981, the general assembly adopted a version of the Uniform Controlled Substances Act,[3] joining in a single proscription an entire range of conduct potentially facilitating or contributing to illicit drug traffic. See § 18-18-105, 8B C.R.S. (1986) (redesignated § 18-18-405, 6 C.R.S. (2000), as applicable here). In addition to the knowing, unauthorized manufacture, dispensing, sale, distribution, and possession of a controlled substance, the same provision also prohibits possessing with an intent to do any of these things, as well as inducing, attempting to induce, and conspiring with another to do any of them. The entire range of conduct is criminalized in a single subsection[4] of a statute entitled simply, "Unlawful distribution, manufacturing, dispensing, sale, or possession."

The one-sentence proscription is structured as a series of acts, with reference to the same controlled substance and governed by a common mens rea. The acts chosen for specific inclusion are not themselves mutually exclusive but overlap in various ways and cover a continuum of conduct from the production of a controlled substance to its delivery to another person, under any of a number of circumstances. All but "possess" are statutory terms of art, see § 18-18-102, 6 C.R.S. (2000), describing regulated activities, and their inclusion as a group serves to make clear that they, along with possession (virtually always preceding, accompanying, or following them) are criminalized, except as otherwise authorized by statute.

The remainder of this multi-paragraph section is devoted entirely to the appropriate sentence for violation of this proscription. At all times applicable to these crimes, a sentence was determined by the kind of drug involved and the defendant's history of drug convictions. With one exception, which resulted from an amendment subsequent to adoption of the statute,[5] the defendant's sentence required by the statute is in no way dependent upon the particular enumerated act or acts he is found to have committed. With regard to the more serious violations (involving schedule I and II controlled substances and the substance flunitrazepam), mandatory minimum sentences are further dictated by the quantity of drugs involved, see § 401(2.5)(b) and (3)(a); and the quantities of drugs involved in multiple violations over a six-month period can be aggregated for purposes of calculating a mandatory minimum sentence.

Nothing in the specific language of the statute or the history of its enactment suggests an intent to create a separate offense

---

3. Forty-eight states (including Colorado) have now adopted some version of the Uniform Controlled Substances Act. Uniform Controlled Substances Act, 9 U.L.A. 1 (1997). The prefatory note makes clear that the Uniform Act "was designed to complement the federal Controlled Substances Act, which was enacted in 1970," and to "maintain uniformity between the laws of the several States and those of the federal government." Id.

4. As applicable to the defendant's convictions in this case, subsection 405(1)(a) provided:

Except as authorized by part 3 of article 22 of title 12, C.R.S., or by part 2 or 3 of this article, it is unlawful for any person knowingly to manufacture, dispense, sell, distribute, possess, or to possess with intent to manufacture, dispense, sell, or distribute a controlled substance; or induce, attempt to induce, or conspire with one or more other persons, to man-

ufacture, dispense, sell, distribute, possess, or possess with intent to manufacture, dispense, sell, or distribute a controlled substance.

5. Under limited circumstances, the statute provides for a mitigated punishment for qualifying defendants, who are not shown to have committed anything more than simple possession of a limited quantity of particular controlled substances. As we noted in *Patton v. People,* 35 P.3d 124, 130 (Colo.2001):

Section 18-18-405(2)(a)(I) initially categorized possession as a class 3 felony. *See* ch. 71, sec. 1, § 18-18-405, 1992 Colo. Sess. Laws 324, 356. In 1994, the section was amended as part of an omnibus crime bill to punish possession as a less serious offense. The legislators were primarily addressing possession for personal use. *See* ch. 287, sec. 24, § 18-18-405, 1994 Colo. Sess. Laws 1714, 1723.

for each proscribed act. On the contrary, the scope and structure of the proscriptive provision, combined with sentencing provisions differentiating punishments on the basis of the quantum of drugs (rather than the act) involved, strongly points to the creation of a single crime, the gravamen of which is preventing the unauthorized delivery of a "particular quantity of a particular contraband substance." *See Lopez v. State,* 108 S.W.3d 293, 299 (Tex.Crim.App.2003). Rather than completely separate offenses, the statute strongly suggests an intent to "criminalize successive stages of a single undertaking," *see United States v. Mendoza,* 902 F.2d 693, 697 (8th Cir.1990), "encompass[ing] every act and activity which could lead to the proliferation of drug traffic," *see United States v. Gomez,* 593 F.2d 210, 213 (3d Cir. 1979).

The Supreme Court has noted that even a manifest purpose of Congress to proscribe lesser or intermediate acts along a continuum leading to an ultimate undesirable result does not indicate that it intended also to pyramid the penalties. *See Prince,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370. Where Congress proscribed both the entry into a federal bank with the intent to rob it, and the robbery itself, the Supreme Court considered it a fair inference that the unlawful entry provision was inserted to cover the situation in which the robbery is frustrated before completion, and to permit conviction the same as if it had been completed—not to punish separately both an entry and a subsequent robbery. *Id.* at 326–29, 77 S.Ct. 403 Similarly, other jurisdictions with statutes derived from the Uniform Act have concluded that acts intermediate to the unlawful delivery of a quantity of drugs, although individually proscribed, were intended to constitute the commission of the same crime. *See, e.g., Lopez,* 108 S.W.3d at 297 ("All of these methods are points along a continuum in the line of drug distribution, from its original manufacture until its physical delivery to the ultimate consumer. Thus, no mat-

ter where the actor and his individual baggie, brick, or rock of cocaine is apprehended along that continuum, the actor may be prosecuted under Section 481.112.").

Although there may be no clear consensus about the reach of a single transaction, or the precise circumstances in which the commission of an enumerated act could constitute a successive unit of prosecution, a substantial number of federal circuit courts of appeal have held that individual acts proscribed by the federal statute, occurring as part of the same transaction, or proved by the same evidence, merge into a single crime. *United States v. Rodriguez–Cardona,* 924 F.2d 1148, 1159 (1st Cir.1991); *Mendoza,* 902 F.2d 693; *United States v. Carcaise,* 763 F.2d 1328, 1333 (11th Cir.1985); *United States v. Gomez,* 593 F.2d at 213; *United States v. Hernandez,* 591 F.2d 1019, 1021–22 (5th Cir. 1979); *United States v. Oropeza,* 564 F.2d 316, 323–24 (9th Cir.1977); *United States v. Olivas,* 558 F.2d 1366, 1368 (10th Cir.1977); *United States v. Curry,* 512 F.2d 1299, 1305 (4th Cir.1975).[6]

We have also concluded, in other contexts, that by joining alternatives disjunctively in a single provision of the criminal code, the legislature intended to describe alternate ways of committing a single crime rather than to create separate offenses. *See, e.g., Woellhaf,* 105 P.3d 209 (demarcating intimate parts with disjunctive "or" in definition of "sexual contact" did not evidence intent to create multiple offenses of sexual assault on a child); *People v. Viduya,* 703 P.2d 1281, 1292 (Colo.1985) (defining vehicular homicide as causing death while operating motor vehicle either recklessly or while under the influence does not create separate offenses); *People v. Holmes,* 129 Colo. 180, 268 P.2d 406 (1954) (using the disjunctive "or" in the burglary statute created alternate ways of committing burglary rather than two separate offenses); *Wright v. People,* 116 Colo. 306, 181 P.2d 447 (1947) (enumerated acts of falsely making, altering, forging, counterfeit-

---

**6.** In *Mendoza,* 902 F.2d at 693, the court noted that although several circuits had found that a defendant was protected merely from multiple sentences, rather than multiple convictions, the view that a second conviction by itself is harmless has been rejected by the Supreme Court in *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). *See also People v. Lowe,* 660 P.2d 1261, 1269–71 (Colo.1983).

ing or uttering a check or draft indicate alternate ways of committing the single offense of forgery).

On the other hand, the general assembly has also demonstrated an awareness that it can make clear its intent to proscribe related activities as different crimes by naming each and segregating them in the criminal code, when it wishes to do so. *See, e.g.,* §§ 18–5–701 to –707, C.R.S. (2004) ("Colorado Financial Transaction Device Crime Act," proscribing in separate sections of the code the unauthorized use of a financial transaction device; possession of a financial transaction device; sale or possession for sale of a financial transaction device; possession or sale of a blank financial transaction device; and the unlawful manufacture of a financial transaction device).

■ If the indicators of legislative intent remained inconclusive, however, the result would not change. Both this court and the United States Supreme Court have required that ambiguity concerning the creation of multiple offenses in a single statute be ultimately resolved in favor of lenity. *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952) (It is appropriate, before choosing the harsher alternative of separately punishable crimes, to require that Congress should have spoken in language that is clear and definite.); *Prince,* 352 U.S. at 329, 77 S.Ct. 403 (Supreme Court policy is to not attribute to Congress an intention to punish more severely than the language of its law clearly imports in light of pertinent legislative history.); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (When Congress' specification of unit of prosecution is unclear, "doubt will be resolved against turning a single transaction into multiple offenses."); *People v. Lowe,* 660 P.2d 1261, 1267–69 (Colo.1983) (holding that in the absence of any clear intent by the legislature that a defendant could be convicted of more than one kind of first-degree murder where

there is only one victim, the rule of lenity requires that the first-degree murder statute be construed in favor of the defendant); *U.S. v. Song,* 934 F.2d 105 (7th Cir.1991) (holding that where unit of prosecution is not clear, rule of lenity allows only one offense to be charged). In light of all the indications suggesting an intent to create a single, unitary offense, as well as the absence of evidence to the contrary, we find that the acts enumerated in section 405(1)(a) all represent stages in the commission of one crime.

■ This determination does not conflict in any way with our recent comparison of "possession" and "manufacturing," in *Patton v. People,* 35 P.3d 124 (Colo.2001). Even assuming the legislature has promulgated separate offenses, punishment for the same conduct pursuant to both proscriptions is constitutionally prohibited in the absence of some additional expression of legislative intent to permit it, whenever one offense is the same as or included within the other. *See id.* (applying the *Blockburger* test). On the other hand, even if each act requires proof of a fact not required by the other, multiple convictions and sentences are still forbidden unless the legislature has actually proscribed each as a separate offense. Therefore, a reviewing court's decision whether to address a challenge to multiple punishments by first comparing the acts for which punishment was separately imposed, or by first assessing whether the acts constitute separate offenses, is largely a matter of preference, based on the circumstances of each case and the extent to which one or the other analysis is likely to completely resolve the question.[7]

In *Patton* we considered it clear that manufacturing a controlled substance cannot be committed without also possessing it, however briefly. *See Patton,* 35 P.3d 124 (noting similar conclusions by the Eighth and Tenth Circuit Courts of Appeal). In the absence of any separate expression of legislative intent to permit multiple punishments, nothing more was required to find a bar to dual

---

**7.** In *United States v. Gore,* 154 F.3d 34, 46 (2d Cir.1998), the Second Circuit Court of Appeals noted that:

[r]ather than relying on *Blockburger,* almost all of the circuit-level cases addressing the 'merg-

er' of possession with intent and distribution under § 841(a)(1) look to the Supreme Court's holding in *Prince,* a decision which addresses offense conduct listed in separate clauses within the same statute.

punishment in that case. Especially because the term "distribute" is statutorily defined to include both "actual" and "constructive" transfers of a controlled substance, § 18–18–102(7), 6 C.R.S. (2000), however, it is less clear that possession is a necessary prerequisite to distribution. *See United States v. Gore,* 154 F.3d 34, 45 (2d Cir.1998) (holding that possession "is certainly helpful in proving distribution, it is technically not a necessary element"); *United States v. Sepulveda,* 102 F.3d 1313, 1317 (5th Cir.1996) (reasoning that it is possible to be guilty of distribution of a drug under federal statute without also possessing it); *United States v. Tejada,* 886 F.2d 483, 490 (1st Cir.1989); *United States v. Brunty,* 701 F.2d 1375, 1381 (11th Cir.1983); *cf. People v. Bloom,* 195 Colo. 246, 577 P.2d 288 (Colo.1978) (possession not lesser included offense of sale); *People v. Holcomb,* 187 Colo. 371, 532 P.2d 45 (Colo.1975) (possession not lesser included offense of sale with intent to induce or aid another to unlawfully use or possess); *United States v. Nelson,* 563 F.2d 928, 931 (8th Cir.1977) (possession not a necessary element of aiding and abetting distribution).

Neither does now finding a legislative intent to define as a single crime the entire range of activities described in section 405(1)(a) require us to overrule, or even conflict with the reasoning of, our prior holdings in *Holcomb,* 187 Colo. 371, 532 P.2d 45, or *Bloom,* 195 Colo. 246, 577 P.2d 288. Both were decided under an earlier, and substantially different, statutory scheme, and neither expressly addressed the question of legislative intent. The statutory scheme existing at that time proscribed possession and sale of "narcotic drugs" in two different statutes[8]— one requiring an additional specific intent—

and proscribed various "unlawful acts" involving "dangerous drugs" in a lengthy series of subsections of a third statute altogether.[9]

In attempting to apply our newly formulated standard for permitting a defendant his requested lesser offense instruction, *see People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974), we held in *Holcomb* merely that possession of a narcotic drug under the "soft sale" statute, C.R.S.1963, § 48–5–2, was not a lesser included offense of sale "with intent to induce or aid another to unlawfully use or possess narcotic drugs," under the "hard sale" statute, C.R.S.1963, § 48–5–20; and further that possession of a dangerous drug, as defined in C.R.S.1963, § 48–8–2(5), was not a lesser included offense of dispensing a dangerous drug, defined in subsection (2)(a) of the same statute. *Holcomb,* 187 Colo. 371, 532 P.2d 45.[10] Three years later, in *Bloom,* we extended our terse analysis in *Holcomb,* without further analysis, to hold that possession of a narcotic drug under the "soft sale" statute was not a lesser included offense of sale under the same statute, and therefore that the constitutional prohibition against double jeopardy did not bar convictions of both. *Bloom,* 195 Colo. 246, 577 P.2d 288. Although we found in those cases that possession and sale under the applicable statutes proscribed "some different kinds of conduct," and therefore were not the same offense for purposes of the double jeopardy clause, we were not asked to, nor did we, expressly find a legislative intent to permit separate convictions for violating the same statute, during the same transaction.[11]

■ Whether or not the *"Blockburger"* test could resolve the question of multiple punishments for the same conduct, the mat-

**8.** C.R.S.1963, §§ 48–5–2 and –20.

**9.** C.R.S.1963, § 48–8–2 (Perm.Supp.1968).

**10.** It is apparent from the court's opinion that Holcolm was neither charged with nor convicted of separate counts of possession but rather requested instructions himself on possession as lesser offenses. Ironically, according to our now well-established understanding of *Rivera,* Holcolm would have been entitled to instructions on the lesser offense of possession, whether or not it was "included" according to the statutory elements test, as long as there was a rational basis

in the evidence to acquit of the greater and convict of the lesser offense. *See Meads,* 78 P.3d at 299.

**11.** We have also, in the past, found inapplicable a holding with implications for the doctrine of former jeopardy on the grounds that the case in which it appeared "was decided before the expansive development of double jeopardy doctrine by the United States Supreme Court, and the court's passing remark on former jeopardy would be in contravention of the law today." *Boulies,* 770 P.2d at 1281 n. 3.

ter of successive violations of the statute would remain. Determining the scope of the offense that the legislature intended to create—the legislature's allowable unit of prosecution—is integral to an assessment of the factual distinctness required for an act to constitute a successive violation of the same offense.

### III.

The double jeopardy clause does not, of course, immunize a defendant from being separately punished for successive commissions of the same statutory offense. In other contexts, we have identified considerations, including such things as temporal and spatial proximity, and the presence of intervening events or volitional departures, that are often relevant to the question whether conduct supporting one conviction of a particular crime is factually distinct from conduct supporting a successive conviction. *See Quintano v. People*, 105 P.3d 585, 591–92 (Colo. 2005); *Woellhaf*, 105 P.3d at 219. We have, however, never articulated a specific list of factors to be dispositive in every case, *see Quintano*, 105 P.3d at 592, because factual distinctness is ultimately a function of the legislature's definition of the crime itself— the legislature's choice of an allowable unit of prosecution.

In *Blockburger*, the Supreme Court held that "[e]ach of several successive sales constitute[d] a distinct offense," under the then-existing Harrison Narcotic Act, where each successive sale was "not the result of the original impulse, but of a fresh one—that is to say, of a new bargain." *Blockburger*, 284 U.S. at 303, 52 S.Ct. 180. Quoting from Wharton,[12] the Court noted, "The test is whether the individual acts are prohibited, or the course of action which they constitute." *Id.* at 302, 52 S.Ct. 180. The Court's reliance on this passage from Wharton drives home the point that successive convictions in that case were permissible only because of Congressional intent to penalize each sale rather than to "create the offense of engaging in the business of selling the forbidden drugs." *Id.* at 302, 52 S.Ct. 180. It in no way suggested, however, that a statute proscribing an entire

course of conduct as a single, continuous crime cannot be violated by the same defendant more than once.

■ Where the legislature has chosen to proscribe an entire course of conduct as one offense, however, a second or successive offense is not necessarily committed by acts that are factually distinct from each other but only by acts that are factually distinct from the entire course of conduct punished by the first conviction. *See Universal C.I.T. Credit Corp.*, 344 U.S. at 225, 73 S.Ct. 227 ("However, a wholly distinct managerial decision ... involves a different course of conduct, and so would constitute a different offense."); *Woellhaf*, 105 P.3d at 219 (referring to "conduct satisf[ying] more than one defined unit of prosecution"). Whether explained in terms of different transactions, separate impulses to commit the statutorily-defined offense, or otherwise, the factual distinctness required for a successive violation can be properly determined only by reference to the organizing principle of the offense. Whether conduct is part of a single offense or amounts to a successive offense ultimately depends upon the legislature's rationale for treating the proscribed acts as related and its purpose in proscribing them as a single crime.

The gravamen of the crime defined by section 405(1)(a) is the unauthorized delivery of a controlled substance, or drug trafficking. The crime is defined to include a number of "points along a continuum in the line of drug distribution," *see Lopez*, 108 S.W.3d at 297, all the way from inchoate forms of manufacture (like attempting or conspiring to induce another to do so) to an ultimate delivery itself. The various enumerated acts are related, or fall along the same continuum, however, only to the extent that they potentially involve the distribution of the same quantum of contraband.

It would be both shortsighted and overly simplistic to attempt to reduce the question of successive convictions for violating section 405 to a single consideration. The range of conduct proscribed by this crime obviously

---

12. Wharton's Criminal Law § 34 (11th ed.).

requires greater flexibility in assessing the factual distinctness of different kinds of conduct. Scenarios can easily be envisioned in which evidence would be sufficient for conviction of violating section 405 without proof of a discrete quantum of drugs at all, or in which various proscribed acts involving the same drugs would not be related as points along the same continuum of distribution. Nevertheless, it would be a highly unusual fact pattern that could justify the separate conviction and punishment of a defendant for the sale or distribution of a discrete quantum of drugs, as well as for another of the statutorily enumerated acts, involving the identical, discrete quantum of drugs.

■ Without attempting to describe all of the factors factually distinguishing one violation of section 405 from another, it is enough here that distributions of a different quantum of drugs to different recipients, or to the same recipient on different occasions, involve different units of prosecution contemplated by section 405, and therefore constitute separate and distinct offenses. Factors like proximity in space and time, intervening events, and volitional departures remain significant in assessing when transactions or occasions are sufficiently distinct, and therefore, whether different quanta of drugs are actually involved. By contrast, however, possessing a discrete quantum of drugs after acquiring it for sale, and selling it as anticipated, clearly constitute a single unit of prosecution contemplated by section 405, and therefore a single offense.

Whether or not particular acts were actually committed is obviously a question of fact. But whether different acts could constitute more than one offense and whether sufficient evidence has been produced to support a factual finding of those acts are matters of law. As long as each legally distinct offense has been charged with sufficient specificity to distinguish it from other offenses, *see Quintano,* 105 P.3d 585; *Woellhaf,* 105 P.3d at 219, and the evidence at trial is sufficient to support convictions of each charge, general verdicts of guilt will be adequate to support multiple convictions.

In this appeal, the defendant does not challenge his multiple convictions for distribu-tion. Separate sales or attempted sales by the defendant to the informant on separate occasions, six days apart, as charged in this case, were distinct offenses, and there was clearly sufficient evidence to support separate convictions for distribution on each of the dates charged. By contrast, where the only evidence supporting separate charges of possession and distribution, on each occasion, consisted of testimony that the defendant was either dispatched and a short time later returned to the prearranged scene of a sale with the discrete quantum of drugs he was convicted of distributing, or that he simply arrived at the prearranged scene of a sale with the drugs he was convicted of attempting to distribute, there was insufficient evidence to support factually distinct violations of section 405.

### IV.

Because section 18–18–405 defines a single offense, and there was insufficient evidence at trial to support convictions for more than one commission of that offense on each of the dates charged, the judgment of the court of appeals vacating the defendant's convictions for possession is affirmed.