The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 27, 2022

## 2022COA124

**No. 19CA1768, *People v Robinson* — Crimes — Insurance Fraud; Constitutional Law — Fifth Amendment — Double Jeopardy — Multiplicity**

The defendant appeals her four convictions for insurance fraud. She contends that, because those convictions are based on a single insurance claim, they are multiplicitous in violation of double jeopardy principles. She also contends that the district court reversibly erred by allowing a detective to testify that he did not think she was telling the truth when he spoke to her during his investigation.

Although a division of the court of appeals disagrees with the defendant on the evidentiary issue, it agrees that her insurance fraud convictions must merge. It concludes that the insurance fraud statute, the complaint and information filed by the

prosecution, and the evidence and argument presented at the defendant's trial all support the conclusion that her three convictions for making false statements under section 18-5-211(1)(e), C.R.S. 2022, must merge into her one conviction for insurance fraud under section 18-5-211(1)(b).

The division therefore affirms the judgment in part, reverses it in part, and remands the case for further proceedings.

COLORADO COURT OF APPEALS                                    **2022COA124**

Court of Appeals No. 19CA1768
Arapahoe County District Court No. 18CR263
Honorable Andrew C. Baum, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Natasha Earnce Robinson,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE YUN
Fox and Tow, JJ., concur

Announced October 27, 2022

Philip J. Weiser, Attorney General, Trina K. Kissel, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jason C. Middleton, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Natasha Earnce Robinson appeals the judgment of conviction entered on jury verdicts finding her guilty of four counts of insurance fraud and one count of false reporting to authorities.[1] She contends, among other things, that because her four convictions for insurance fraud are based on a single insurance claim, those convictions are multiplicitous in violation of double jeopardy principles.

¶ 2     In resolving her appeal, we address an issue of first impression in Colorado and hold that, when a defendant is convicted under (1) section 18-5-211(1)(b), C.R.S. 2022, for one count of presenting a fraudulent insurance claim, and (2) section 18-5-211(1)(e) for one or more counts of making false statements in support of the *same* insurance claim, the prohibition against double jeopardy and multiplicity will generally require the conviction (or convictions) under section 18-5-211(1)(e) to merge into the conviction under section 18-5-211(1)(b).

---

[1] Although the jury found Robinson guilty of the defense's proposed lesser nonincluded offense of false reporting to authorities, this conviction does not appear on the district court's sentencing order. To the extent Robinson stands convicted of that offense, she does not challenge that conviction on appeal.

1

¶ 3    In this case, the insurance fraud statute, the complaint and information filed by the prosecution, and the evidence and argument presented at Robinson's trial all support the conclusion that her three convictions for making false statements under section 18-5-211(1)(e) must merge into her one conviction for insurance fraud under section 18-5-211(1)(b).  We therefore affirm the judgment in part, reverse it in part, and remand the case to the district court for further proceedings.

## I.    Background

¶ 4    According to the prosecution's evidence and theory of guilt, Robinson purchased a car but did not initially buy insurance coverage for it.  Two weeks later, Robinson's boyfriend and cousin were driving the uninsured car and knocked over a stop sign, causing heavy damage to the car.  Later that day, Robinson bought insurance coverage for the car.  A few days later, Robinson reported to police that her car had been stolen and that it had no prior damage.  She also filed a claim for insurance coverage based on the alleged theft.  During two recorded telephone calls with her insurance company, as well as one recorded telephone call with a police detective, Robinson lied about her car being stolen and not

2

knowing who took it. She repeated those lies in the affidavit she submitted to her insurance company.

¶ 5        Following the trial, the jury found Robinson guilty of four counts of insurance fraud and one count of false reporting to authorities. As relevant here, the jury found Robinson guilty of

    (1)    presenting a fraudulent insurance claim in violation of section 18-5-211(1)(b);

    (2)    making a false statement to an insurance company representative on August 15, 2016, in violation of section 18-5-211(1)(e);

    (3)    making a false statement to an insurance company representative on August 17, 2016, in violation of section 18-5-211(1)(e); and

    (4)    making a false statement in an affidavit submitted to the insurance company on August 24, 2016, in violation of section 18-5-211(1)(e).

The court then entered judgment of conviction and sentenced Robinson to concurrent terms of three years' probation.

¶ 6        Robinson now appeals.

## II. Multiplicity in Violation of Double Jeopardy

¶ 7     Robinson contends that her four convictions for insurance fraud are multiplicitous in violation of double jeopardy principles because they are based on a single insurance claim. We agree.

### A. Standard of Review, Preservation, and Standard of Reversal

¶ 8     Whether convictions must be merged because they are multiplicitous in violation of double jeopardy principles is a question of law that we review de novo. *See Magana v. People*, 2022 CO 25, ¶ 18.

¶ 9     The parties agree that this issue was unpreserved. But our review of the record indicates it *was* preserved. *See People v. Tallent*, 2021 CO 68, ¶ 11 ("[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved and what standard of review should apply, regardless of the positions taken by the parties."). At sentencing, Robinson's counsel told the court that "there's a merger issue" with the four insurance fraud convictions based on the essential elements of those offenses. Counsel did not specifically request that the district court merge the convictions, however, instead arguing only that

"cumulative sentences" on those convictions would violate Robinson's double jeopardy rights. The court ruled,

> I have thought about whether or not some of the fraud claims are just simply *different ways of committing the same offense,* but I believe without having it right in front of me at this very moment in time, I believe that there are enough individual elements for each of the offenses, that *they are separate offenses. However,* I — I think that they should be concurrent, the sentences.

(Emphasis added.)

¶ 10    The double jeopardy issue presented here is whether Robinson's multiple insurance fraud convictions are based on "alternate ways of committing the same offense." *Woellhaf v. People,* 105 P.3d 209, 215 (Colo. 2005). The district court addressed that very issue, concluding that the offenses are "separate," although it ultimately ruled that concurrent sentences were appropriate. *See Plemmons v. People,* 2022 CO 45, ¶ 21 (concluding that the defendant's arguments were sufficient for preservation because they "allow[ed] the trial court a meaningful chance to prevent or correct the error and create[d] a record for appellate review." (quoting *Martinez v. People,* 2015 CO 16, ¶ 14)).

¶ 11     Even if the issue had not been preserved, however, the parties appear to agree that if we find a double jeopardy violation here, then reversal is warranted.  Indeed, the People explicitly concede that at least one of Robinson's insurance fraud convictions should be merged.  Further, both parties cite cases supporting the proposition that if an appellate court concludes that multiplicitous convictions violate double jeopardy, reversal is warranted regardless of preservation.  *See, e.g., People v. Gillis*, 2020 COA 68, ¶ 26 ("'In the double jeopardy context, the answer [to whether plain error occurred] would invariably be "yes"' if the defendant was convicted multiple times for the same conduct.") (alteration in original) (citation omitted); *People v. Arzabala*, 2012 COA 99, ¶ 19 ("Where a reviewing court finds a double jeopardy violation, regardless of whether the issue was raised in the trial court, the defendant is entitled to appropriate relief on appeal."); *see also People v. Tillery*, 231 P.3d 36, 47-48 (Colo. App. 2009) (analyzing the issue in detail and arriving at the same conclusion), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011).  *But see People v. Thompson*, 2018 COA 83, ¶¶ 38-50 (finding a double jeopardy violation but

affirming the defendant's convictions because the issue was unpreserved), *aff'd*, 2020 CO 72.

### B. General Law Regarding Units of Prosecution, Multiplicity, and Double Jeopardy

¶ 12 Unless a statute expressly authorizes otherwise, the Double Jeopardy Clauses of the United States and Colorado Constitutions protect "against multiple punishments for the same offense." *Woellhaf*, 105 P.3d at 214 (quoting *Whalen v. United States*, 445 U.S. 684, 688 (1980)).

¶ 13 Multiplicity may implicate double jeopardy principles if a statute creates "alternate ways of committing the same offense." *Id.* at 215. In these situations, whether multiple punishments are permissible entails a determination of the legislatively prescribed unit of prosecution. *Id.* The unit of prosecution is the way a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses. *Id.*

¶ 14 To determine the unit of prosecution for a particular offense, we look exclusively to the statute defining the offense. *Id.* "In construing a statute, our primary purpose is to ascertain and give effect to the legislature's intent." *McCoy v. People*, 2019 CO 44,

¶ 37.  To that end, we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings.  *Id.* "We must also endeavor to effectuate the purpose of the legislative scheme." *Id.* at ¶ 38.  "In doing so, we read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.*

After determining the statutory unit of prosecution, double jeopardy analysis requires us to consider "whether the defendant's conduct constitutes factually distinct offenses, that is, whether the conduct satisfies more than one defined unit of prosecution." *Woellhaf*, 105 P.3d at 219.  Relevant factors in making that determination include the time and location of the acts, the defendant's intent, whether the acts were the product of new volitional departures, whether the acts were separated by intervening events, and whether the People presented the acts as legally separable.  *People v. Valera-Castillo*, 2021 COA 91, ¶ 53.

### C. Application

For three reasons, we conclude that Robinson's four convictions for insurance fraud are multiplicitous in violation of

double jeopardy principles, and that her three convictions for making false statements under section 18-5-211(1)(e) must merge into her one conviction for insurance fraud under section 18-5-211(1)(b).

¶ 17    First, our interpretation of the statutory language and the way the statute is constructed support that conclusion.  The insurance fraud statute states:

> A person commits insurance fraud if the person does any of the following:
>
> (a) . . . ;
>
> (b) With an intent to defraud *presents or causes to be presented any insurance claim, which claim contains false material information* or withholds material information;
>
> (c) . . . ;
>
> (d) . . . ; *or*
>
> (e) With an intent to defraud *presents or causes to be presented any* written, verbal, or digital material or *statement as part of, in support of* or in opposition to, *a claim for payment or other benefit pursuant to an insurance policy, knowing that the material or statement contains false material information* or withholds material information.

§ 18-5-211(1)(a)-(e) (emphasis added).

9

¶ 18    In a statute defining an offense, when "a number of acts are joined as a disjunctive series, in a single sentence, without any attempt to differentiate them by name or other organizational device, a legislative intent to permit separate convictions and sentences for each enumerated act is not so readily apparent." *Friend v. People*, 2018 CO 90, ¶ 16 (quoting *People v. Abiodun*, 111 P.3d 462, 466 (Colo. 2005)). "To the contrary, . . . 'by joining alternatives disjunctively in a single provision of the criminal code, the legislature intended to describe alternate ways of committing a single crime rather than to create separate offenses.'" *Id.* (quoting *Abiodun*, 111 P.3d at 467).

¶ 19    Robinson's conviction under section 18-5-211(1)(b) was based on her presenting "an[] insurance claim" that contained false material information. Her three convictions under section 18-5-211(1)(e) were based on her presenting three statements containing false material information "in support of" the insurance claim. At least under the circumstances here, Robinson's false statements under section 18-5-211(1)(e) were part and parcel of her fraudulent insurance claim under section 18-5-211(1)(b). *Accord Perelman v. State*, 981 P.2d 1199, 1200 (Nev. 1999) ("Although

10

[Nevada's insurance fraud statute] makes the filing of a false statement a crime, the overall intent of the statute is to address the filing of a false claim through the use of fraud, misrepresentations, or false statements. Thus, when multiple false statements are made in support of one claim, only one crime has been committed."); *cf. Thompson*, ¶¶ 38-50 (construing a similarly constructed statute and concluding that the defendant's security fraud convictions were multiplicitous).

¶ 20     Further, our interpretation avoids potential absurd results. *See McBride v. People*, 2022 CO 30, ¶ 23. Robinson's three convictions under section 18-5-211(1)(e) were based on two telephone calls with her insurance company and an affidavit she completed for the company. But what if the insurance company had a more exhaustive process that involved more telephone calls and more forms to fill out? All those countless communications could lead to countless convictions under section 18-5-211(1)(e), while still being based on only *one* insurance claim under section 18-5-211(1)(b). For this reason, among others explained in this opinion, we reject the People's argument that the only proper remedy here would be to merge Robinson's one conviction under

11

section 18-5-211(1)(b) into her three convictions under section 18-5-211(1)(e).

¶ 21 Second, our conclusion is supported by the way the prosecution charged this case. The charge for filing the false claim under section 18-5-211(1)(b) listed the offense as having occurred "[o]n or about and between August 11, 2016, and August 30, 2016." The charges under section 18-5-211(1)(e) for making the three false statements in support of the claim listed those offenses as having occurred on or about August 15, 17, and 24, 2016 — within the timespan charged under section 18-5-211(1)(b).

¶ 22 In highlighting that, though, we are not suggesting that filing a fraudulent insurance claim is a "continuing offense" like, for example, a criminal conspiracy. *See* § 18-2-204(1), C.R.S. 2022. As the supreme court explained in *Woellhaf*, a multiplicity issue that arises from a statute providing for alternate ways of committing the same offense — the issue before us here — is *distinct* from a multiplicity issue that arises when a statute defines a crime as a continuous course of conduct. *See* 105 P.3d at 214-15.

¶ 23 Third, our conclusion is supported by the way the prosecution presented its case at trial. *See Valera-Castillo*, ¶ 53. Notably, the

prosecutor began his closing argument by emphasizing that Robinson made the same false statements "over and over again" on "call after call" "[t]o get [insurance] coverage for her car." The prosecutor added that Robinson told the "same story" in her affidavit.

¶ 24 In rebuttal closing, the prosecutor stayed the course, arguing that Robinson's repeated false statements to her insurance company were intended to "affect" the insurance company's decision whether to cover her claim. Then, the prosecutor concluded rebuttal closing — not by emphasizing *how many* counts of insurance fraud Robinson was guilty of — but instead by simply arguing, "Follow the tracks that Ms. Robinson tried to hide. Use your common sense and find her guilty of insurance fraud . . . ."

¶ 25 For all these reasons, we conclude that the district court erred by entering judgment of conviction and sentence on multiple counts of insurance fraud, and we conclude that Robinson should stand convicted of just one count of insurance fraud under section 18-5-211(1)(b).

## III. Evidentiary Issue

¶ 26    Robinson also contends that the district court reversibly erred by allowing a detective to testify that he did not think Robinson was telling the truth during a telephone call with him.  We disagree.

### A. Additional Facts

¶ 27    During a recorded telephone call, Robinson (1) initially told the detective the same thing she had told her insurance company about her car having been stolen after she mistakenly left the keys in it overnight; (2) later admitted that it was her boyfriend and cousin who had used the car; and (3) ultimately admitted that she made a "false report" and "lied" to the insurance company.

¶ 28    At trial, during the detective's testimony, the prosecutor introduced and published a recording of that telephone call.  After publishing only a portion of it — how much is unclear — the prosecutor paused the recording and engaged in the following exchange with the detective:

> Q. All right.  So at this point in time when
> Ms. Robinson is telling you that she has used
> the car during the day on [August] 12th,
> [2016,] on that Friday, and you also are in
> receipt of this, you know, hit-and-run report
> [involving the stop sign] that happened late at

14

> night on [August] 11th, what are you sort of thinking is going on here?
>
> A. At that point, she's not telling the truth about the hit-and-run — or the motor vehicle theft [that occurred.]

The prosecutor then published the remainder of the telephone call.

## B.   Discussion

¶ 29    Robinson argues that the detective's testimony that he did not think she was telling the truth during the first portion of the call violated the rule in *Liggett v. People*, 135 P.3d 725, 731-32 (Colo. 2006), that it is generally improper to ask a witness to comment on the veracity of another witness with "were they lying" types of questions.

¶ 30    The parties agree, as do we, that review of Robinson's claim is for plain error because defense counsel did not contemporaneously object to the question or testimony at issue.  *See Campbell v. People*, 2020 CO 49, ¶ 25.  A plain error is one that is obvious and substantial.  *Hagos v. People*, 2012 CO 63, ¶ 14.  An error is obvious if it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law.  *Campbell*, ¶ 25.  An error is substantial, in turn, if it so undermines the fundamental fairness of

15

the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 14.

¶ 31    We discern no plain error for three reasons.

¶ 32    First, the prosecutor did not ask the detective a "was she lying" type of question. Rather, he simply asked the detective "what [he was] thinking" at that point in the telephone call. *Liggett* was a case of prosecutorial misconduct, but the prosecutor's question here was not improper.

¶ 33    Second, the detective's testimony was not obviously improper because it arguably fell within an exception to the *Liggett* rule — namely, that a "law enforcement official[] may testify about [his] perception of a witness's credibility during an investigative interview . . . when it is offered to provide context for the [official's] interrogation tactics and investigative decisions." *Davis v. People*, 2013 CO 57, ¶ 1.

¶ 34    And third, the detective's brief statement did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction because, later during the very same telephone call, Robinson admitted to the detective that she had been lying earlier in the call.

¶ 35    For these reasons, we conclude that the district court did not plainly err by allowing the detective to testify that he did not think Robinson was telling the truth during his telephone call with her.

IV.    Conclusion

¶ 36    The judgment is affirmed in part and reversed in part. Robinson's insurance fraud conviction under section 18-5-211(1)(b) is affirmed.  Robinson's three insurance fraud convictions under section 18-5-211(1)(e) are reversed, and the case is remanded for the district court to vacate those three convictions and sentences. *See People v. Wood*, 2019 CO 7, ¶¶ 33-34 (there is no meaningful distinction between "vacating" and "merging" multiplicitous convictions).

JUDGE FOX and JUDGE TOW concur.